### STATE OF CONNECTICUT *v.* ZACHARY JAY ELSON
### (AC 31511)

DiPentima, C. J., and Bishop, Gruendel, Harper, Lavine, Beach, Robinson, Alvord and Dupont, Js.

---

(*Two judges concurring separately in two opinions; two judges concurring and dissenting in one opinion*)

Argued May 26—officially released December 7, 2010*

*Hubert J. Santos*, with whom were *Benjamin B. Adams* and, on the brief, *Hope C. Seeley*, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's

---

* This case originally was decided on August 4, 2009, by a three judge panel. See *State* v. *Elson*, 116 Conn. App. 196, 975 A.2d 678 (2009). Thereafter, on September 3, 2009, this court granted the defendant's motion for reconsideration and reargument en banc. This opinion supersedes only part V of the prior decision.

attorney, and *Warren C. Murray*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Zachary Jay Elson, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a).[1] Also, as alleged in a part B information, the trial court found the defendant guilty of committing an offense while on pretrial release in violation of General Statutes § 53a-40b (1). On December 10, 2008, the defendant's direct appeal was argued before a panel of three members of this court, which, with one judge concurring in part and another judge concurring in part and dissenting in part, affirmed the judgment of conviction. *State* v. *Elson*, 116 Conn. App. 196, 975 A.2d 678 (2009). Thereafter, this court granted the defendant's motion for reargument and reconsideration en banc.[2] In that motion, the defendant challenged this court's rejection of one of the several claims raised in the appeal, specifically, that this court should vacate the sentence imposed by the trial court and remand the case for resentencing because the trial court had considered improper factors at the time of sentencing. Following reargument and reconsideration of that claim, we affirm the judgment of the trial court.

The facts underlying the judgment of conviction, as they reasonably could have been found by the jury, were set forth in *State* v. *Elson*, supra, 116 Conn. App. 196. "On September 3, 2004, the female victim was a

---

[1] The jury returned a verdict of not guilty as to one count of attempt to commit assault in the first degree.

[2] See Practice Book §§ 70-7 and 71-5. We reconsider the claim at issue by use of the briefs submitted by the parties and reviewed by the court when it decided *State* v. *Elson*, supra, 116 Conn. App. 196.

student enrolled at Western Connecticut State University. During the late afternoon, the victim was working on a project in an empty classroom at the university's Danbury campus. The defendant, who was not a student enrolled at the university, entered the classroom, pretending to search for a lost cellular telephone. The defendant spoke with the victim about the telephone; the victim told him that she had not seen it and suggested that he speak with campus police or the maintenance staff. The defendant lingered in the classroom, inquired about the victim's project and asked if he could stay and watch her work. Also, the defendant asked the victim if she was dating anyone. The victim replied that she preferred to work alone and that she was happily married. The defendant stated that he was embarrassed and left the classroom.

"Several minutes after this encounter, the defendant returned to the classroom. The defendant stated that he had forgotten to look on the floor for his telephone. The victim remained seated while she worked but soon sensed the defendant approach her. The victim turned her attention to the defendant and observed him holding a knife near her neck. The victim grabbed the knife and tried to pull it away from the defendant. In the struggle that ensued, the victim fell to the floor and attempted to crawl away. The defendant pursued the victim. He positioned her so that she was lying on her back and then positioned himself on top of her. He straddled her such that each of his knees was on either side of her body and, as the victim continued to resist, punched the victim in her face with his fist. For a brief period of time, the defendant prevented the victim from fleeing. Ultimately, the victim freed herself from the defendant and obtained assistance from others on campus.

"Several days into their investigation, police detectives located and questioned the defendant. The defendant initially told the detectives that he had never been

to the campus and had a spotty recollection of his activities on September 3, 2004. After being informed that a female had sustained injuries that were not life threatening on that date at the university, the defendant stated: 'I don't remember why I did it. I got angry.' He characterized what had occurred as 'all a big mistake.'

"In a written statement that the defendant voluntarily provided to the detectives, he admitted that he had driven to the campus on September 3, 2004, emptied garbage from his automobile and began walking to 'see what was going on around campus.' The defendant stated that earlier that day he had consumed vodka and that after walking about the campus he returned to his automobile, where it is possible that he passed out for several minutes. The defendant stated that he then entered a classroom building to use a restroom and that at that time he was 'very, very drunk.'

"The defendant recalled entering a classroom in which he observed a young female who was working on a sketch. He intended to initiate a conversation with her and recalled speaking with her. The defendant stated that when he began to walk away from her, the tip of a knife that he carried in the pocket of his pants poked his leg. According to the defendant, he removed the knife from his pocket, and, at that moment, the female turned to him, observed the knife and began yelling. The defendant stated that 'everything went from a thick haze to a fearful blur' and that he 'must have reached out to try to stop her but accidentally hurt her.' The defendant stated: 'I remember an overpowering feeling of fear; things speeding by, and [I] punched her in her head—she had fallen, and in doing so, maybe knocked the knife out of my hand—I had to pick it up. I punched her again, and my hands were bloody, I never said a word. I think she whimpered when I had rushed to pick up the knife and ran.' The defendant stated that he returned to his automobile and quickly drove away

from the scene. Following the incident, the defendant traveled to a fast-food restaurant where he washed the victim's blood off his hands. He also traveled to a highway rest stop where he changed his clothing and discarded the clothing and sneakers that he had worn during the attack in a nearby wooded area.

"The victim sustained numerous physical injuries. Those injuries included lacerations on the fingers of her right hand; one of her fingers required surgery to repair a severed tendon. The victim also sustained lacerations on her chin, near her left eye and on her left arm. At the time of trial in 2006, the physical effects of those injuries were still evident in that the victim experienced a limited degree of flexibility in her surgically repaired finger and exhibited scars on her fingers, right hand, arm and face." Id., 199–202.

With regard to the claim under reconsideration, the defendant argues that the court deprived him of his right to due process when it considered improper factors at the time of sentencing.[3] Specifically, the defendant asserts that the court, in imposing sentence, improperly was affected by (1) the fact that he proceeded to trial rather than accept a plea bargain extended by the state and (2) a full exhibit, namely, a knife that the state offered in evidence during the trial.[4]

---

[3] Although the defendant asserts that the court infringed upon his "state and federal constitutional rights," the defendant does not provide an independent analysis of his claim under our state constitution. Accordingly, we will not analyze the defendant's claim under the state constitution. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 375 n.12, 933 A.2d 1158 (2007).

[4] During the trial, the court admitted the knife into evidence over the defendant's objection. On appeal, the defendant challenged this evidentiary ruling, which was reviewed on its merits and upheld in *State* v. *Elson*, supra, 116 Conn. App. 212–19.

The defendant's claim is based upon specific statements that the court made during the sentencing proceeding on June 8, 2006; the statements, and their context, are set forth in the discussion that follows. At the commencement of the proceeding, the prosecutor addressed the court, ultimately recommending a total effective sentence of thirty-five years incarceration, suspended after twenty-five years, followed by five years probation with special conditions. Thereafter, the victim read an impact statement she had written. The defendant's attorney addressed the court, suggesting that the court consider factors that supported a lenient sentence. The court listened to statements made by a family friend of the defendant as well as the defendant's father. The defendant exercised his right of allocution, expressing remorse for the criminal conduct underlying his convictions. He stated in relevant part: "I'd like to apologize to [the victim] and her family . . . . I've hurt you, I've terrified you, and I've destructed your sense of security, viciously. What I did was horrible, and from the bottom of my heart I'm so sorry for what I did to you and your family. I know I probably can't make it okay right now, but I'm going to do my best. And, again, I'm just so sorry. I'd also like to apologize to the court and also the [Western Connecticut State University] community because in violating one of their student's safety and security—and I violated all of this. I'd also like to apologize to my family. I wish I hadn't done this to any of them."

Thereafter, the court stated that it would "make some introductory remarks before [proceeding] to formal sentencing." At that time, the court indicated that it had considered a letter submitted to the court from the defendant's mother and the statement of the defendant's father. The court then stated: "We've all heard the defendant's apology. I don't know how sincere it is, but it is certainly unfortunate that it comes so late

in the process. If the defendant had been truly apologetic, he wouldn't have put the victim through the trial. To a large extent, it seems to me that the defendant's apology represents thinking of himself rather than the victim."

The court discussed the victim's "credible" trial testimony, noting that "[t]here is no reason in my mind to doubt her testimony that the defendant came at her from behind with a knife to her throat." The court stated: "A person intends the natural consequences of his acts. And the natural consequences of that act is to cause serious physical injury. [The] [d]efendant came about six inches away from killing this young woman or completely ruining her life; for that, I suppose, the victim and the defendant should both consider themselves fortunate.

"As the state correctly points out, the victim was totally blameless. This is not a case in which the victim knew the defendant, provoked the defendant, enticed the defendant or did anything to threaten the defendant. The victim bears no part of the blame for this incident. Despite that, the defendant threatened to rob [the victim] of the prime of her life. He threatened to rob the victim of being a wife, a mother, an adult daughter, a college educated artist or a person with some other promising career. Thus, it is fully appropriate that I take away the defendant's liberty during the prime of his life.

"The defendant's defense was intoxication. There is no question that the defendant had been drinking to an excess on September 3, 2004. But the defendant is responsible for his own actions. He had been through a well-known alcohol rehabilitation program, undoubtedly paid for by his caring parents, and thrown away all the good that this program had done him.

"On the day in question, the defendant put a . . . knife with a six inch blade in his pants as he walked

into [Western Connecticut State University]. Why did he do that?

"Even if the defendant had drunk to an excess, there must be some deep-seated anger within the defendant that explains this act of rage and violence, which the state aptly points out appears to be part of a pattern. This, in my view, makes the defendant a dangerous person, one from whom the victim, [Western Connecticut State University], and society should be protected.

"It also points out, incidentally, the dangers of substance abuse. There's no evidence, I don't think, that the defendant was using drugs on the day in question, but he does have a history of drug and alcohol abuse and . . . it has long been clear to me that drug and alcohol abuse is not a victimless crime. And today's sentencing provides graphic evidence of that.

"Furthermore, intoxication simply does not explain his statement to the police and his testimony in court that this was an accident. Did the accident supposedly occur because of intoxication? I never understood that. But I do know that this was no accident. I do not believe the defendant's testimony that he just happened to get poked in the leg with his knife, that he just happened to pull the knife out at that time and that [the victim] just happened to turn around at that time. I believe the defendant gave a false explanation to the police, that he testified falsely in court and that he essentially obstructed justice in doing so. And this is an aggravating factor."

The court observed that the defendant had committed the crimes at issue while he was released on bail after having been charged with other felony crimes. The court stated: "A judge in Norwalk trusted the defendant and released him. The defendant abused that trust in the worst way. No judge has a crystal ball. We cannot tell for certain when we make bail decisions who will

commit crimes while on bail and who will not. We make mistakes. But if we do not punish those who do commit crimes while given a privilege of release, we will not be doing all we can to deter others from abusing that privilege.

"By committing these crimes while out on bail, the defendant not only committed a crime against the victim but also committed a crime against the court. The defendant broke his word to the court and showed disrespect for the law. The only mitigating factor I can find in this situation is that the defendant at least admitted the bail status violations. . . . [I]n due course, it will be entirely up to the judge in Norwalk to decide how to sentence in those cases. . . . [T]he current convictions are separate offenses from the ones in the Norwalk [court] . . . ." Thereafter, the court sentenced the defendant on each count, imposing a total effective sentence of twenty-five years imprisonment, execution suspended after twenty years, followed by five years of probation with special conditions. The sentencing proceeding concluded without any additional comments by defense counsel.

On appeal, the defendant claims that the court's remarks concerning the defendant's apology indicate that, in imposing sentence, the court considered and, thus, punished him for exercising his fundamental right to stand trial. Also, the defendant claims that the court's remarks concerning his possession of a knife with a six inch blade indicate that the court believed that a knife in evidence was the knife used in his commission of the crimes against the victim. The defendant argues that "[t]his comment had no basis in the record, was materially unreliable, and substantially prejudiced [him] at sentencing." The defendant further argues that the court's consideration of the knife in evidence was improper because the knife in evidence "was much

larger than the one described by the [victim] and likely aggravated the severity of his sentence."

In his main brief, the defendant analyzes both aspects of the claim as being constitutional in nature, urges us to conclude that the court violated his due process right to a fair trial and, by way of a remedy, requests that this court vacate his sentence and remand the case for resentencing. Our careful review of the record, however, reveals that the defendant did not raise either aspect of this claim before the trial court. The defendant, in his main brief, does not acknowledge or address the fact that he failed to raise either aspect of this claim before the trial court. Thus, in his main brief, the defendant does not request any extraordinary review of either aspect of this claim. In its brief, the state argues that the claim is unpreserved and that this court should not afford it review. The state argues, in the alternative, that the claim is without merit.

In his reply brief, the defendant, for the first time, requests review of both aspects of the claim under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] The defendant states that, although he did not cite *Golding* in his main brief, he nonetheless "fully address[ed] [his] entitlement to such relief" therein. Also, the defendant observes that the state, after arguing in its brief that the claim was not reviewable, did address the claim on its merits. In the alternative, the defendant asserts in his reply brief that this court should exercise its inherent supervisory authority over the administration of justice to review both aspects of the claim.[6]

[5] During oral argument when this case originally was heard by a three judge panel on December 10, 2008, the defendant's appellate attorney represented that he mistakenly omitted a citation to *Golding* in the defendant's main brief. He referred to this omission as a "clerical error."

[6] The defendant argues that, insofar as his claim is related to the court's consideration of the knife that was admitted into evidence, "that claim was properly preserved at trial when [he] objected to its admission during the state's case-in-chief." We disagree. We fail to see how the defendant's eviden-

In the defendant's motion for reargument and reconsideration en banc, he advances several arguments with regard to the reviewability of the claim. In contrast to his reply brief, in which he explicitly requested that this court review the claim under *Golding* and exercise its supervisory powers to review the claim, the defendant asserts that "*Golding* review or other forms of extraordinary relief" are unnecessary means to review this claim. In this vein, he argues, first, that other types of unpreserved constitutional claims properly are reviewable on appeal without recourse to *Golding*. The defendant notes that he analyzed the claim, of constitutional magnitude, fully in his main brief and that such analysis was a sufficient basis upon which to review the claim. Second, the defendant argues that this court should review the claim despite the fact that he did not object at trial and did not affirmatively seek an extraordinary level of review because, given the nature of the claim, it would have been difficult for him to have preserved the claim of error at the time of sentencing, and there was "no reasonable remedy" available to him at trial. Third, the defendant asserts that, if the claim properly was reviewable under *Golding*, he sufficiently demonstrated his entitlement to such level of review in his main brief. Finally, the defendant asserts that, if he is not entitled to review under *Golding*, this court should exercise its supervisory authority over the administration of justice to review the claimed error.

I

## REVIEW UNDER *GOLDING*

It is a bedrock principle of appellate jurisprudence that, *generally*, claims of error not raised before the

tiary objection during the trial, which related to the admissibility of the knife, could be said to have alerted the court to the present claim of error, which is of constitutional magnitude and is related solely to the manner in which the court imposed sentence following trial.

trial court will not be considered by a reviewing court. The principle is rooted in considerations of fairness as well as judicial economy. See, e.g., *State* v. *Boyd*, 295 Conn. 707, 757–58, 992 A.2d 1071 (2010) ("[a]s we have observed repeatedly, [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]); *State* v. *King*, 289 Conn. 496, 505, 958 A.2d 731 (2008) ("[t]he purpose of the [rule of practice that claims of instructional error are reviewable only if they are raised at trial] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials" [internal quotation marks omitted]); *State* v. *Arena*, 235 Conn. 67, 80–81, 663 A.2d 972 (1995) ("It is axiomatic that our system of law encourages the conservation of judicial time and resources. . . . Accordingly, a trial court is vested with the power to take corrective action to counteract any prejudice that might result during trial and to avoid unnecessary retrials." [Citations omitted.]).

Application of this principle is a disincentive to parties who would, for strategic purposes, fail to raise a claim at trial and, following an adverse verdict, pursue the claim of error on appeal. See *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 730, 941 A.2d 309 (2008) ("[w]e have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal" [internal quotation marks omitted]); *State* v. *Taylor*, 153 Conn. 72, 86–87, 214 A.2d 362 (1965) ("This court is not bound to consider claims of law not made at the trial. . . . This rule

applies to criminal as well as civil cases. . . . [T]his policy does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal. Under such a procedure [1] claims of error would be predicated on matters never called to the attention of the trial court and upon which it necessarily could have made no ruling in the true sense of the word; and [2] the appellee, here the state, would be lured into a course of conduct at the trial which it might have altered if it had any inkling that the accused would, in the event of a conviction, claim that such a course of conduct involved rulings which were erroneous and prejudicial to him." [Citations omitted.]), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966); *State* v. *Tuller*, 34 Conn. 280, 295 (1867) (A defendant must object to claims of error at trial, for if he "does not avail himself of the opportunity, he must be holden to a waiver of the objection. Otherwise he would be permitted to lie by and speculate upon the chances of a verdict, and that cannot be tolerated.").

Practice Book § 60-5 sets forth this general principle, providing in relevant part: "[A reviewing] court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

Our Supreme Court reaffirmed this principle in *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973), noting

that "[o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." The court went on to recognize "only two situations that may constitute 'exceptional circumstances' such that newly raised claims can and will be considered by this court." Id., 70. The first circumstance arises "where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal." Id. The second circumstance arises "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Id.

Sixteen years later, in *State* v. *Golding*, supra, 213 Conn. 239, our Supreme Court "articulate[d] guidelines designed to facilitate a less burdensome, more uniform application of the . . . *Evans* standard in future cases involving alleged constitutional violations that are raised for the first time on appeal." In clarifying the manner in which the *Evans* standard should be applied, the court set forth the now familiar *Golding* test: "[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id., 239–40.

Our Supreme Court, in *Golding*, stated that "[t]he defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." Id., 240. The court went on to state that "[t]he defendant also bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." Id. Explaining the third prong of *Golding*, the court stated: "[I]f we are persuaded that the merits of the defendant's claim should be addressed, we will review it and arrive at a conclusion as to whether the alleged constitutional violation clearly exists and whether it clearly deprived the defendant of a fair trial." Id., 241. Finally, the court emphasized that, if harmless error analysis applied to the claim at hand, the state shouldered the burden of demonstrating that the claimed violation was harmless beyond a reasonable doubt. Id.

Subsequently, our Supreme Court has characterized the nature of review under *Golding* as follows: "*Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim— would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Nevertheless, because constitutional claims implicate

fundamental rights, it also would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial. *Golding* strikes an appropriate balance between these competing interests: the defendant may raise such a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review. The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. Thus, as we stated in *Golding*, we will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred . . . . [F]or any *Golding* claim, [i]t is incumbent [on] the [defendant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's] claims would be entirely speculative." (Citation omitted; internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 719–20, 924 A.2d 809 (2007).

To this day, absent a defendant's resort to another extraordinary level of review, the analytical framework of *Golding* governs the analysis of claims of constitutional error raised for the first time on appeal. The proper application of *Golding*, however, has been the subject of subsequent appellate decisions. Those decisions reaffirm that it is the defendant who bears the burden of demonstrating an entitlement to review under *Golding*. "[D]efendants who seek consideration of

unpreserved constitutional claims [on appeal] . . . bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding*." *State* v. *Waz*, 240 Conn. 365, 371 n.11, 692 A.2d 1217 (1997).

Furthermore, our Supreme Court and this court have stated that, as a prerequisite to *Golding* review, a party must *affirmatively request* review pursuant to *Golding* in its main brief.[7] See, e.g., *In re Jan Carlos D.*, 297 Conn. 16, 20 n.10, 997 A.2d 471 (2010) ("[a]s this court has recognized repeatedly, a party may seek to prevail on unpreserved claims under the plain error doctrine; see Practice Book § 60-5; or, if the claims are constitutional in nature, under [*State* v. *Golding*, supra, 213 Conn. 239–40], if the party affirmatively requests and adequately briefs his entitlement to such review in his main brief" [internal quotation marks omitted]); *State* v. *Cutler*, 293 Conn. 303, 324, 977 A.2d 209 (2009) ("[a] party is obligated . . . affirmatively to request review under [*Golding*]" [internal quotation marks omitted]); *State* v. *Bowman*, 289 Conn. 809, 815, 960 A.2d 1027 (2008) (same); *State* v. *McKenzie-Adams*, 281 Conn. 486, 533 n.23, 915 A.2d 822 (same), cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007); *State* v. *Reid*, 277 Conn. 764, 781, 894 A.2d 963 (2006) ("[i]t is well established . . . that parties must affirmatively seek to prevail under *State* v. *Golding*, [supra, 239–40], or the plain error doctrine [embodied in Practice Book § 60-5] and bear the burden of establishing that they

---

[7] This requirement of an affirmative request for a level of review is consistent with the well settled principle that, generally, it is inappropriate for an appellate court to consider a claim that was not raised and briefed on appeal; see, e.g., *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686 (2007) (noting that Appellate Court limited to resolving claims raised by parties); or to engage in a level of review that has not been requested. See, e.g., *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 17, 761 A.2d 740 (2000) ("[i]t is not appropriate to engage in a level of review that is not requested" [internal quotation marks omitted]).

are entitled to appellate review of their unpreserved constitutional claims" [internal quotation marks omitted]); *Lebron* v. *Commissioner of Correction,* 274 Conn. 507, 532, 876 A.2d 1178 (2005) ("[w]e recognize that a party may prevail on unpreserved constitutional claims pursuant to . . . *Golding* . . . if the party affirmatively requests and adequately briefs his entitlement to *Golding* review"); *State* v. *Ramos,* 261 Conn. 156, 171, 801 A.2d 788 (2002) ("[a] party is obligated . . . affirmatively to request review under [*Golding*]"); *State* v. *Skidd,* 104 Conn. App. 46, 51–52 n.5, 932 A.2d 416 (2007) (court declines to review claim under *Golding* when defendant failed to brief entitlement to *Golding* in main brief); *State* v. *Wheatland,* 93 Conn. App. 232, 243–44, 888 A.2d 1098 ("Connecticut law is clear that a party seeking review of unpreserved claims under either the plain error doctrine; Practice Book § 60-5; or *State* v. *Golding,* [supra, 239–40], must affirmatively request such review"), cert. denied, 277 Conn. 919, 895 A.2d 793 (2006).

It is inappropriate for a party to request review under *Golding* for the first time in its reply brief. See, e.g., *Lebron* v. *Commissioner of Correction,* supra, 274 Conn. 532 (declining to review claim under *Golding* when request appears for first time in reply brief); *State* v. *Garvin,* 242 Conn. 296, 312, 699 A.2d 921 (1997) ("[t]he reply brief is not the proper vehicle in which to provide this court with the basis for our review under an *Evans-Golding* analysis" [internal quotation marks omitted]); *State* v. *Rosario,* 113 Conn. App. 79, 93, 966 A.2d 249 (declining to review claim under *Golding* because request for such review made for first time in reply brief), cert. denied, 291 Conn. 912, 969 A.2d 176 (2009); *State* v. *Spiegelmann,* 81 Conn. App. 441, 447, 840 A.2d 69 (same), cert. denied, 268 Conn. 921, 846 A.2d 882 (2004); *Daniels* v. *Alander,* 75 Conn. App. 864, 882–83, 818 A.2d 106 (2003) (same), aff'd, 268 Conn.

320, 844 A.2d 182 (2004); *State* v. *Wright*, 62 Conn. App. 743, 756, 774 A.2d 1015 (same), cert. denied, 256 Conn. 919, 774 A.2d 142 (2001); *State* v. *Rodriguez*, 60 Conn. App. 398, 399 n.1, 759 A.2d 123 (2000) (same), cert. denied, 255 Conn. 928, 767 A.2d 103 (2001); *State* v. *Jones*, 34 Conn. App. 807, 815, 644 A.2d 355 (same), cert. denied, 231 Conn. 909, 648 A.2d 158 (1994).

With regard to the present claim, the record reflects that the defendant did not bring the claim to the attention of the trial court during the sentencing proceeding or at any time thereafter. Rather, the defendant raised this claim for the first time on appeal. The defendant now argues that it was unnecessary for him to seek any type of extraordinary review of the claim because it would have been difficult for him to have raised an objection at trial and there was no remedy reasonably available to him at trial. Also, the defendant argues that, because our Supreme Court has ruled that other types of unpreserved constitutional claims are reviewable on appeal absent a party's resort to an extraordinary level of review, the present claim should be treated similarly.

As a preliminary matter, we are not persuaded that the defendant was in any manner hampered in his ability to raise before the trial court a proper objection to the court's statements.[8] Such objection would have alerted

[8] In his concurring and dissenting opinion, Judge Bishop states that "it would have been extraordinarily difficult and of no practical value under these particular circumstances for counsel to have interrupted the court during its sentencing comments in order to effect any change in the sentence imposed because the court's comments revealed that it had already formulated its view tying together the defendant's absence of remorse with his exercise of the fundamental right to a trial." See footnote 1 of Judge Bishop's concurring and dissenting opinion.

Respectfully, we disagree with these observations on several grounds. First, if the defendant's trial counsel had a good faith basis in the law to object to the trial court's comments at the time of sentencing, it was his immediate obligation to raise such objection before the court. See, e.g., *State* v. *Stewart*, 64 Conn. App. 340, 352, 780 A.2d 209 (discussing general obligation of defense counsel to raise objections on behalf of defendant), cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001). Second, we do not suggest

the court to the claim of error, afforded the court an opportunity to address the claim on the record and, if necessary, to take corrective action in advance of an appeal. On several occasions, this court has indicated that *Golding* applies in its review of sentencing claims similar to the sentencing claim at issue. See, e.g., *State* v. *Bazemore*, 107 Conn. App. 441, 459–60, 945 A.2d 987 (court rejects under *Golding*'s third prong unpreserved claim that trial court improperly considered several uncharged crimes at sentencing), cert. denied, 287 Conn. 923, 951 A.2d 573 (2008); *State* v. *Dudley*, 68 Conn. App. 405, 425–26, 791 A.2d 661 (court rejects under *Golding* unpreserved claim that trial court considered improper factors at sentencing), cert. denied, 260 Conn. 916, 797 A.2d 515 (2002); *State* v. *Middlebrook*, 51 Conn. App. 711, 732–33, 725 A.2d 351 (court declines to review unpreserved claim that trial court

that defense counsel needed to have interrupted the court during its sentencing remarks to preserve the present claim for appellate review. Insofar as the comment challenged by the defendant was uttered during the court's lengthy remarks at the time of sentencing, the defendant's counsel may have raised his objection at an opportune time after the court had concluded its remarks. The record reflects that, when the court finished delivering its remarks, it invited counsel to address any relevant matters, stating: "Anything further from counsel?" To this inquiry, defense counsel stated, "No, Your Honor." The record does not reveal anything unique to these circumstances that rendered the bringing of an objection an extraordinarily difficult undertaking. Third, we are perplexed by the reasoning that it would have been "of no practical value" to raise an objection because the court already had formulated an improper ruling. The court had a basic judicial duty to either sustain or overrule any objections with which it was presented and, in the interest of judicial economy, to take any corrective action warranted by law prior to the bringing of an appeal. This is why our case law and rules of practice encourage parties to raise claims of error before the trial court. Essentially, the concurring and dissenting opinion appears to suggest that raising a claim of error related to sentencing is a fruitless act because, once made, judges simply will not correct such errors. Objections to rulings, however, must follow the announcement of such rulings. Experience, as well as confidence in the operation of our judicial system and the judges who serve it, counsels us to expect that trial judges will take corrective action with regard to rulings that they deem to be improper.

made improper remarks at sentencing because defendant did not request *Golding* or plain error review in connection with such claim), cert. denied, 248 Conn. 910, 731 A.2d 310 (1999); *State* v. *Patterson*, 23 Conn. App. 431, 432, 580 A.2d 548 (court concludes unpreserved claim that trial court considered improper testimony at sentencing not constitutional in nature and thereby rejects request for *Evans-Golding* review), cert. denied, 216 Conn. 831, 583 A.2d 131 (1990).

Also, the defendant relies upon decisions of our Supreme Court that have expressly concluded that it is unnecessary for a criminal defendant to rely upon *Golding* to obtain review of certain types of unpreserved claims of constitutional magnitude and that it is unnecessary for a reviewing court to analyze such claims under *Golding*. The subject matter of these types of claims involves the sufficiency of the evidence and prosecutorial impropriety. In *State* v. *Roy*, 233 Conn. 211, 212–13, 658 A.2d 566 (1995), our Supreme Court concluded that it was appropriate to review the merits of a defendant's sufficiency of the evidence claim despite his failure to request review of that unpreserved claim under *Golding*. The court stated: "It is 'an essential of the due process guaranteed by the [f]ourteenth [a]mendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.' *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)." *State* v. *Roy*, supra, 212–13. Likewise, in *State* v. *Adams*, 225 Conn. 270, 276 n.3, 623 A.2d 42 (1993), our Supreme Court held: "*Jackson* v. *Virginia*, [supra, 316], compels the conclusion that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*."

In *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004), our Supreme Court concluded that it was unnecessary for a defendant to seek to prevail under *Golding* and for a reviewing court to engage in a *Golding* analysis of prosecutorial impropriety claims. The court explained: "The reason for this is that the touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). . . . Regardless of whether the defendant has objected to an incident of [impropriety], a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the [impropriety] is viewed in light of the entire trial. The application of the *Williams* factors, therefore, is identical to the third and fourth prongs of *Golding* . . . . Requiring the application of both *Williams* and *Golding*, therefore, would lead . . . to confusion and duplication of effort. Furthermore, the application of the *Golding* test to unchallenged incidents of [impropriety] tends to encourage analysis of each incident in isolation from one another. Because the inquiry must involve the entire trial, all incidents of [impropriety] must be viewed in relation to one another and within the context of the entire trial. The object of inquiry before a reviewing court in claims involving prosecutorial [impropriety], therefore, is always and only the fairness of the entire trial, and not the specific incidents of [impropriety] themselves. Application of the *Williams* factors provides for such an analysis, and the specific *Golding* test, therefore, is superfluous." (Citations omitted.) *State* v. *Stevenson*, supra, 573–74. The court also noted: "In this regard, we assume, of course, that the defendant's

claimed prosecutorial [impropriety] is in fact presented by an adequate record—essentially the first *Golding* requirement. We note also that a claim of prosecutorial [impropriety] will, by its very nature, be of truly constitutional magnitude—essentially the second *Golding* requirement." Id., 574 n.11.[9]

As is apparent from our earlier discussion, *Golding* is a judicially created doctrine of reviewability. Our Supreme Court made *Golding* applicable to a broad class of claims, namely, "alleged constitutional violations that are raised for the first time on appeal." *State v. Golding*, supra, 213 Conn. 239. Only in subsequent decisions has that court expressly announced exceptions to the rule by "disconnect[ing] the *Golding* rubric" from these distinct classes of unpreserved constitutional claims. *State v. Stevenson*, supra, 269 Conn. 574–75 n.11. In general, for this court to create additional exceptions to *Golding* would be inconsistent with its obligation strictly to adhere to the precedent of our Supreme Court. See *Stuart v. Stuart*, 297 Conn. 26,

[9] Unpreserved claims concerning the sufficiency of the evidence or prosecutorial impropriety, by virtue of their *subject matter*, are not reviewed under *Golding*. Additionally, both our Supreme Court and this court have concluded that, regardless of whether the claim raised on appeal is of constitutional magnitude, *Golding* review is unavailable if an appellant induced the error at issue. See, e.g., *State v. Coward*, 292 Conn. 296, 305, 972 A.2d 691 (2009) ("we have refused to review claims of induced error under *Golding*"); *State v. Cruz*, 269 Conn. 97, 107, 848 A.2d 445 (2004) ("the defendant is not entitled to [*Golding*] review of his claim of induced impropriety because he requested the very jury instruction he now challenges"); *State v. Coleman*, 114 Conn. App. 722, 733–34, 971 A.2d 46 (concluding that defendant not entitled to review of induced error), cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009). In a similar vein, both our Supreme Court and this court have routinely declined to afford *Golding* review to claims that have been waived. See, e.g., *Mozell v. Commissioner of Correction*, 291 Conn. 62, 70, 967 A.2d 41 (2009) ("when a right has been affirmatively waived at trial, we generally do not afford review under either *Golding* or the plain error doctrine"); *State v. Hudson*, 122 Conn. App. 804, 814, 998 A.2d 1272 (declining to afford *Golding* review to waived claim), cert. denied, 298 Conn. 922, 4 A.3d 1229 (2010).

45–46, 996 A.2d 259 (2010) (Appellate Court, as intermediate court of appeal, not at liberty to overrule, reevaluate or reexamine controlling precedent of Supreme Court). Accordingly, we conclude that this claim falls within the ambit of the *Golding* doctrine.

Having concluded that the claim at issue falls within the class of claims to which *Golding* applies, we next address the defendant's contention that he affirmatively had requested such level of review in his main brief. It is not disputed that the defendant raised and addressed the constitutional claim at issue in his main brief; the issue is whether he affirmatively requested review of the claim pursuant to *Golding*. Our Supreme Court has not elaborated with regard to what a defendant must do, in his or her main brief, affirmatively to request such review.[10] Nonetheless, guided by ample precedent concerning the nature and scope of *Golding* review as well as considerations of fundamental fairness to the court and to the parties, we may interpret that requirement.

In interpreting the affirmative request requirement associated with *Golding*, we readily eschew the notion that it necessarily includes the use of talismanic words or phrases, such as a citation to the *Golding* opinion or a recitation of any specific language from that opinion in an analysis of the reviewability of the claim. In a variety of contexts, "Connecticut courts have refused to attach talismanic significance to the presence or absence of particular words or phrases." *State* v. *Janulawicz*, 95 Conn. App. 569, 576 n.6, 897 A.2d 689 (2006). Although a party's explicit reference to the *Golding* decision, or specific portions thereof, undoubtedly adds clarity to a reviewability analysis, it is not the only means by

---

[10] Recently, this court addressed the issue in *State* v. *Wright*, 114 Conn. App. 448, 969 A.2d 827 (2009), a decision we address in greater detail later in our analysis.

which a party may request review pursuant to *Golding*. Rather, what is required in making an affirmative request for review, is that a party present an analysis consistent with the principles codified in *Golding* for the review of unpreserved claims of constitutional magnitude. As a starting point, a party seeking review of such claim must alert the reviewing court to the fact that the claim is unpreserved or that there is a possibility that the reviewing court may determine that the claim is not properly preserved for appellate review.[11] Thereafter, the party must, in its main brief, present an analysis based in law and tailored to the unique circumstances surrounding the claim that, if the reviewing court determines that the claim is not preserved, the claim nevertheless is reviewable on appeal because (1) the record is adequate to review the claim and (2) the claim is of constitutional magnitude, alleging the deprivation of a fundamental constitutional right.[12]

Thus, we take this opportunity to define an affirmative request for review pursuant to *Golding* as nothing less than an explicit assertion and analysis in a party's

[11] Such an acknowledgment may be made expressly or by reasonable implication. For example, a party's request for "review pursuant to *Golding*," or words to that effect, reasonably would alert a reviewing court to the fact that an issue of preservation exists with regard to the claim at issue. Obviously, a party may argue that a claim is preserved properly for review and, in the alternative, argue that, if the reviewing court concludes otherwise, review of the unpreserved claim is appropriate because the record is adequate for review and the claim is of constitutional magnitude. Such a method of argument commonly appears in briefs submitted to this court.

[12] "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). To demonstrate that a claim is reviewable under *Golding*, a party must demonstrate that, despite the fact that the claim was not raised at trial and, thus, the court did not have an opportunity to rule upon the claim, the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Golding*, supra, 213 Conn. 239.

main brief that explains that, if the reviewing court deems a particular claim to be unpreserved, that claim nonetheless is reviewable on appeal because the record is adequate to review the claim and it is a claim of constitutional magnitude. It would render meaningless the requirement that an affirmative request be made were this court to conclude that a defendant could bear his or her burden of affirmatively requesting review under *Golding* simply by setting forth an unpreserved claim of constitutional magnitude. In *In re Melody L.*, 290 Conn. 131, 154, 962 A.2d 81 (2009), the appellant raised an unpreserved constitutional claim on appeal before our Supreme Court. The court declined to review the claim, stating: "It is well established . . . that parties affirmatively seek to prevail under *Golding*, and bear the burden of establishing that they are entitled to appellate review of their unpreserved constitutional claims. . . . In the present case, however, the [appellant] does not seek a review under *Golding*. Her brief makes no mention of, or request for *Golding* review. Consequently, we decline to review the [appellant's] constitutional claims." (Citation omitted.) Id. Certainly, *In re Melody L.* reinforces precedent that requires appellants affirmatively to request review under *Golding* and supports our conclusion that merely raising a claim of constitutional magnitude on appeal is insufficient to invoke *Golding*. Similarly, to provide a reviewing court only with an analysis of the merits of an unpreserved claim of constitutional magnitude, without any analysis of the reviewability of the claim, does not satisfy the requirement that such party affirmatively address its entitlement to review of the claim. Our case law makes clear that *Golding* is, and was intended to be, a narrow exception to the general prohibition against reviewing unpreserved claims on appeal. It is wholly consistent with this view of *Golding* that a party be required to request, in an affirmative manner, that such review be undertaken.

In the present case, insofar as it concerns the sentencing claim at issue in this appeal, the defendant, in his main brief, analyzes the claim under the federal constitution. The defendant's main brief does not identify or address any issues related to the reviewability of the claim; it does not state that any extraordinary level of review is requested, does not refer to the *Golding* opinion either by name or in substance and does not address the issue of the adequacy of the record to review the claim. In his main brief, the defendant did not present an analysis that, if the claim was not preserved, it nevertheless should be reviewed. In short, the defendant stated and analyzed the claim as though it were a properly preserved due process claim. We cannot conclude that such a briefing strategy satisfied the defendant's burden of affirmatively requesting review pursuant to *Golding.* In accordance with the authority cited previously in this opinion, the defendant's explicit request for review under *Golding,* contained in his reply brief, is of no consequence to our analysis. Under the circumstances present, we conclude that the defendant, in his main brief, did not affirmatively request review under the principles set forth in *Golding.* Accordingly, we decline to engage in such review of his unpreserved claim.

Before concluding our discussion of this issue, we must address the defendant's reliance, in his motion for reargument and reconsideration en banc, upon the majority opinion in *State* v. *Wright,* 114 Conn. App. 448, 455–64, 969 A.2d 827 (2009).[13] The defendant in *Wright* raised a claim of constitutional magnitude for the first time on appeal. Id., 457. In his main brief, the defendant

[13] *Wright* was argued before a three judge panel of this court. The concurring judge in *Wright* disagreed with the majority's *Golding* analysis, concluding that "the defendant has failed to brief adequately the issue of whether he is entitled to *Golding* review." *State* v. *Wright,* supra, 114 Conn. App. 470 (*DiPentima, J.,* concurring).

in *Wright* did not cite to *Golding* but provided this court with a record that was adequate to review the claim and, by discussion of relevant authority, demonstrated that his claim was of constitutional magnitude. Id., 463–64. The state argued that the claim was not reviewable on appeal because it was unpreserved and the defendant had failed explicitly to request review under *Golding*. Id., 456. In a thorough analysis of the reviewability issue presented in *Wright*, this court reasoned that it was "[not] mandatory for a defendant to cite *Golding* to obtain review of an unpreserved claim of a constitutional deprivation at trial . . . ." Id., 463. The court equated such a requirement as inimical to the rationale of *Golding* and the equivalent of adding a "fifth prong" to the *Golding* test. Id., 460. The court, considering what steps a defendant must take to alert a reviewing court that *Golding* review is requested, concluded that a defendant is entitled to review under *Golding* if he "present[ed] a record that is adequate for review and affirmatively [demonstrated] that his claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) Id., 463. Thereafter, the court reviewed the unpreserved claim under *Golding* and disposed of the claim under *Golding*'s third prong. Id., 469.

We disagree with *Wright*'s analysis of the affirmative request requirement associated with *Golding*. The majority in *Wright* recognized that an affirmative request is a prerequisite to review pursuant to *Golding*. Id., 460. After concluding, as do we, that such request need not encompass a citation to the *Golding* decision, however, the court in *Wright* effectively concluded that a defendant need not do anything to alert the reviewing court that review of a potentially unpreserved claim is requested and why such review is appropriate. Rather than requiring a defendant, at a minimum, to analyze affirmatively the issue of reviewability as a means of

requesting review, *Wright* leaves it to a reviewing court, sua sponte, to determine whether review of the claim under *Golding* is appropriate on the basis of the adequacy of the record and the nature of the claim raised on appeal. This, in our view, eviscerates the requirement established in our case law that a defendant, in an affirmative manner in his main brief, request review pursuant to the *Golding* doctrine. Such an interpretation of the affirmative request requirement contravenes precedent requiring defendants to "bear the burden of establishing their entitlement to . . . review under the guidelines enumerated in *Golding*." *State* v. *Waz*, supra, 240 Conn. 371 n.11. To have any meaningful significance, the affirmative request requirement cannot be satisfied by a defendant's silence; he must alert the court as well as the adverse party that review of a claim that the reviewing court may determine is unpreserved is requested and, by competent analysis, *why such review is appropriate* in accordance with the principles set forth in *Golding*.

Furthermore, in rejecting the approach set forth in *Wright*, we recognize that our Supreme Court, in *Golding*, expressly sought to facilitate a *uniform* method for the review of unpreserved claims of constitutional magnitude. *State* v. *Golding*, supra, 213 Conn. 239. The affirmative request requirement is a means of attaining uniformity in the manner that such claims are raised by litigants and, more importantly, addressed by reviewing courts and panels thereof. Under our interpretation of the affirmative request requirement, an appellant is entitled to consideration under *Golding* after he has analyzed his entitlement to that level of review in his main brief, thus putting the court and the opposing party on notice that such level of review has been requested. The approach in *Wright*, however, permits the reviewing court to determine whether consideration under *Golding* is warranted despite the fact that an

appellant has not made a clear request for such level of review. In other words, the approach in *Wright* leaves it to the reviewing court to determine if *Golding* review is appropriate without, first, requiring that a party raise such reviewability issue in its brief. Certainly, such an interpretation of the affirmative request requirement risks an application of *Golding* that is, and likely may be perceived to be, less than uniform in nature.

As has often been observed, "this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc." *Consiglio* v. *Transamerica Ins. Group*, 55 Conn. App. 134, 138 n.2, 737 A.2d 969 (1999); see also *State* v. *DiFano*, 109 Conn. App. 679, 687, 952 A.2d 848, cert. denied, 289 Conn. 937, 958 A.2d 1246 (2008); *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 285 n.20, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005). Binding precedent from our Supreme Court, as well as precedent from this court, limits appellate review to that level of review requested on appeal and, specifically, requires that appellants affirmatively request review pursuant to *Golding*. In light of our interpretation of this precedent, we take this opportunity to overrule *Wright* insofar as it addresses the affirmative request requirement associated with *Golding*.

II

## REVIEW UNDER THIS COURT'S SUPERVISORY AUTHORITY

The defendant, for the first time in his reply brief, asserts that it is "appropriate" for this court to exercise its inherent supervisory authority over the administration of justice to review his sentencing claim. The defendant's analysis in support of this request consists of a footnote in his reply brief in which he sets forth boilerplate language related to such authority. The reply

brief is devoid of any analysis as to why such review is appropriate in light of the unique circumstances surrounding this claim. The defendant's request suffers from several infirmities.

First, this request for review first appears in the defendant's reply brief. Although the defendant raised his sentencing claim in his main brief, he did not request in that brief that this court exercise its supervisory authority or analyze his claim accordingly by demonstrating that such level of review was warranted. By waiting until the time that he filed his reply brief to make such a request, he deprived the state of the opportunity to respond to the request in its brief. "Generally, this court does not consider claims raised for the first time in a reply brief." *Perry* v. *State*, 94 Conn. App. 733, 740 n.5, 894 A.2d 367, cert. denied, 278 Conn. 915, 899 A.2d 621 (2006); id. (applying principle to request for supervisory authority in defendant's reply brief).

Second, the defendant's request for this court to exercise its supervisory authority consists of little more than an assertion that such level of review is appropriate. The defendant quoted from one case that set forth boilerplate language concerning the exercise of supervisory authority generally. He did not, however, provide any analysis related to this authority or, by reference to the specific circumstances surrounding this claim, attempt to demonstrate why this court should exercise such authority with regard to the present claim. A request for review, like a claim raised on appeal, must be accompanied by an adequate analysis. "[W]e repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Smith* v. *Andrews*, 289 Conn. 61, 80, 959 A.2d 597 (2008).

Third, even were we to consider, sua sponte, exercising our inherent supervisory authority to review the unpreserved claim, we conclude that the interests of justice do not require that we exercise our supervisory powers to grant the defendant relief. "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . The standards that [are] set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law . . . . Rather, the standards are flexible and are to be determined in the interests of justice. . . . [O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle. . . . [T]he integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 518–19 n.23, 973 A.2d 627 (2009). "Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Ouellette*, 271 Conn. 740, 762 n.28, 859 A.2d 907 (2004). "Additionally, [i]n certain instances, dictated by the interests of justice, we may, sua sponte, exercise our inherent supervisory power to review an unpreserved claim that has not been raised appropriately under the *Golding* or plain error doctrines. *State* v. *Ramos*, [supra, 261 Conn. 172 n.16]. [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . .

*State* v. *Anderson*, 255 Conn. 425, 439, 773 A.2d 287 (2001)." (Internal quotation marks omitted.) *Smith* v. *Andrews*, supra, 289 Conn. 79.

Our careful review of the parties' briefs and the record of the trial leads us to conclude that neither aspect of the present unpreserved sentencing claim warrants the exercise of our supervisory powers. The defendant had an opportunity to raise the present claim before the trial court and, after failing to do so, to seek review of his unpreserved claim under the *Golding* doctrine. Under the circumstances apparent in the record, discussed more fully below, we do not deem it appropriate to exercise our supervisory powers to grant the defendant relief with regard to this unpreserved claim.

In the present case, the defendant couched his claim in broad terms, asking "[w]hether the trial court considered improper factors when sentencing [him], thereby depriving him of due process of law . . . ." At issue, of course, is whether, at the time of sentencing, the court improperly had considered his decision to proceed to trial. In *State* v. *Kelly*, 256 Conn. 23, 79–84, 770 A.2d 908 (2001), our Supreme Court addressed on its merits an identical type of claim. In *Kelly*, the defendant claimed "that the trial court violated his federal and state constitutional rights by improperly considering, at the sentencing phase of the proceedings, the defendant's decision to proceed to trial." Id., 79–80. A closer examination of *Kelly* is warranted, as it strongly influences our decision not to exercise our supervisory authority with regard to this claim.

At the time of sentencing, the trial court in *Kelly* discussed the several sentencing factors it had considered. Id., 80 n.27. Within this discussion, the court stated: "The general factors which I have considered in this matter is whether or not there was a plea or a

complete trial, and that is one of the legal factors to consider in sentencing." (Internal quotation marks omitted.) Id. In analyzing the defendant's claim that the trial court, at the time of sentencing, improperly had *considered his decision to stand trial,* our Supreme Court focused exclusively on whether the trial court had *augmented the defendant's sentence* because he had exercised such right. Id., 81–84. Thus, the court began its analysis by stating: "[A] trial court possesses, within statutorily prescribed limits, broad discretion in sentencing matters. On appeal, we will disturb a trial court's sentencing decision only if that discretion clearly has been abused. . . . In spite of that discretion, however, the [a]ugmentation of sentence based on a defendant's decision to stand on [his or her] right to put the [g]overnment to its proof rather than plead guilty is clearly improper." (Citation omitted; internal quotation marks omitted.) Id., 80–81. Furthermore, our Supreme Court explicitly stated that, in determining whether the trial court's comments concerning the defendant's decision to proceed to trial had infringed upon his constitutional rights, a reviewing court must, based upon a totality of the circumstances apparent in the entire record, determine whether the court had "lengthened a defendant's sentence as a punishment for exercising his or her constitutional right to a jury trial . . . ." Id., 82. The court determined that it was the defendant who carried the burden of proof with regard to such claims. Id.[14]

---

[14] It is noteworthy that this court has applied *Kelly*'s analytical approach to a claim that a court, at the time of sentencing in a revocation of probation hearing, improperly drew an adverse inference from a defendant's silence at the hearing. See *State* v. *Fisher,* 121 Conn. App. 335, 347–53, 995 A.2d 105 (2010). In *Fisher,* the defendant claimed that the court's remarks at sentencing reflected that it had drawn an adverse inference from his silence, thus violating his fifth amendment privilege. Id., 349. In analyzing the claim, this court asked whether "the totality of the circumstances surrounding the defendant's sentencing gives [any] indication that the court *improperly augmented the defendant's sentence* on the basis of his decision to exercise his privilege to remain silent throughout the revocation hearing." (Emphasis

The *Kelly* court examined relevant precedent, observing that courts that have considered claims of a similar nature "generally have required remarks by a trial judge to threaten explicitly a defendant with a lengthier sentence should the defendant opt for a trial, or indicate that a defendant's sentence was based on that choice." Id. The court observed that "[w]here a trial court employed more ambiguous language, however, courts generally have rejected claims that the trial court infringed on the defendant's rights." Id., 83.

Turning to the facts of the claim before it, our Supreme Court in *Kelly* rejected the constitutional claim raised after concluding that "the totality of the circumstances surrounding the defendant's sentencing gives no indication that the trial court improperly augmented the defendant's sentence based on his decision to stand trial." Id. The court gave consideration to the fact that the trial court at sentencing explicitly referred to several other sentencing factors. Id. Thereafter, the court noted: "No fair reading of the record would permit the conclusion that the trial court's comment should be understood to mean that it was lengthening the defendant's sentence based on his choice to stand trial. Rather, we interpret the trial court's remark as a reminder to the defendant of the oft acknowledged truth that many factors favor relative leniency for those who acknowledge their guilt . . . and thus help conserve scarce judicial and prosecutorial resources for those cases that merit the scrutiny afforded by a trial. . . . There is a world of difference between that reminder and a clear showing that the defendant received a lengthier sentence because he chose to exercise his right to a jury trial." (Citation omitted; internal quotation marks omitted.) Id., 84.

added.) Id., 352. Ultimately, this court concluded that no such impermissible augmentation had occurred and, on that ground, rejected the defendant's constitutional claim. Id., 353.

The record in the present case is inherently ambiguous with regard to whether the court, in fact, augmented the defendant's sentence because he elected to stand trial. First, the court's comments reasonably can be interpreted as a mere assessment of the sincerity of the defendant's apology, not a criticism of his election to stand trial. Second, although the court made the comment at issue concerning the defendant's apology at the sentencing proceeding, it is not clear whether the court considered that sentiment when it actually imposed the sentence. Third, if anything, the transcript of the court's comments at sentencing reflects that the court imposed the sentence that it did because it viewed the defendant, by virtue of his criminal conduct, to be a dangerous person from whom society should be protected and stated that he had committed the present crimes while on pretrial release. Immediately prior to imposing sentence, the court did not discuss the defendant's apology or his decision to stand trial but only the evidence presented at trial concerning the crime and the manner in which the defendant committed it. On appeal, the rulings of the trial court are entitled to a presumption of correctness; a reviewing court does not presume error on the basis of an incomplete or ambiguous record. See *State* v. *Crumpton*, 202 Conn. 224, 231–32, 520 A.2d 226 (1987); *State* v. *Tocco*, 120 Conn. App. 768, 781 n.5, 993 A.2d 989, cert. denied, 297 Conn. 917, 996 A.2d 279 (2010); *State* v. *Koslik*, 116 Conn. App. 693, 704–705, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009). Absent an articulation related to the factors actually considered by the trial court in imposing sentence, it would require this court to engage in speculation and conjecture to determine what the trial court meant by the comment at issue and whether such comment in any way affected the severity of the sentence imposed. It is well settled that "speculation and conjecture . . . have no place in appellate

review." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970 A.2d 578 (2009).

Thus, following our careful review of the totality of the circumstances as they are depicted in the entire record before us, we do not conclude that the defendant has made "a clear showing"; *State* v. *Kelly*, supra, 256 Conn. 84; that the court augmented his sentence based on his decision to proceed to trial. In *Kelly*, the trial court explicitly stated that it had considered whether the defendant had proceeded to a complete trial rather than entering a plea. Id., 80 n.27. Moreover, the court declared that such consideration was one of several "legal factors to consider" at sentencing; the court explicitly viewed that factor as relevant to the sentence imposed. (Internal quotation marks omitted.) Id. Our Supreme Court, however, concluded that the totality of the circumstances did not reveal that the court had augmented the defendant's sentence based on his decision to proceed to trial. Id., 83. The circumstances in the present case are far more ambiguous. The court did not threaten the defendant or state that the sentence imposed was based upon his decision to proceed to trial. Cf. id., 82. Rather, the court, in evaluating the defendant's apology, referred to the fact that the defendant had "put the victim through the trial." Unlike the trial court in *Kelly*, the court in the present case did not state that the defendant's decision to proceed to trial, in and of itself, was a sentencing factor but discussed several other factors that were relevant to the sentence it imposed. Accordingly, the defendant has not met his burden of proof by providing this court with a record that justifies the exercise of our supervisory powers.[15]

---

[15] In his concurring and dissenting opinion, Judge Bishop concludes that this court should exercise its supervisory authority and remand the case for resentencing. In so concluding, the concurring and dissenting opinion relies upon its underlying determination that "the [trial] court impermissibly tainted the sentencing process" because "the court's comments revealed

that it had already formulated its view tying together the defendant's absence of remorse with his exercise of the fundamental right to a trial."

It should be apparent that the analysis undertaken in the concurring and dissenting opinion differs from that undertaken in our opinion. In accordance with the analysis set forth in *Kelly*, our analysis is tailored to determining whether the court improperly augmented the defendant's sentence. In his concurring opinion, Judge Robinson follows *Kelly*'s analysis, stating that "in order to review the defendant's claim, this court must consider the facts in the record to discern whether, based on the totality of the circumstances, the court improperly enhanced the defendant's sentence." Ultimately, Judge Robinson concludes that this court should not exercise its supervisory authority "when the record before us only indicates that there is but the possibility that the trial court penalized the defendant for taking advantage of his constitutional right to trial by jury." Furthermore, Judge Dupont followed *Kelly*'s analysis when she reviewed the sentencing claim on its merits, concluding that "the totality of the circumstances surrounding the defendant's sentencing gives no indication that the court improperly augmented the defendant's sentence on the basis of the defendant's decision to stand trial." *State* v. *Elson*, supra, 116 Conn. App. 245 (*Dupont, J.*, concurring in part).

Judge Bishop does not conclude that the record adequately demonstrates that the court actually augmented the defendant's sentence improperly but bases his conclusion on other considerations, as set forth in his separate opinion. In an attempt to distinguish *Kelly* from the present case and justify a departure from *Kelly*'s analysis, Judge Bishop's concurring and dissenting opinion states: "In *Kelly*, the focus was on whether the court lengthened a defendant's sentence as punishment for exercising the right to trial. Other cases, however, focus on whether the court impermissibly took the defendant's exercise into consideration at sentencing. Because the issue was framed in *Kelly* as a claim that the court actually elongated the defendant's sentence as a consequence of his having exercised his right to trial, the Supreme Court on review responded in like manner." See footnote 8 of Judge Bishop's concurring and dissenting opinion. Respectfully, we conclude that that is an incorrect characterization of the issue framed by the defendant in *Kelly*. In his statement of the issues, the defendant in *Kelly* framed the issue as follows: "Whether the trial court erred in considering the fact that it was imposing a sentence following the defendant's exercise of his constitutional right to a trial rather than as a result of a plea bargain?" *State* v. *Kelly*, Conn. Supreme Court Records & Briefs, December Term, 1999, Pt. 6A, Defendant's Brief p. vi. In his brief, the defendant in *Kelly* did not base his claim solely upon a theory of sentence augmentation; he asserted unequivocally that the court's explicit consideration of his decision to proceed to trial was an infringement of his constitutional rights. Stated otherwise, he argued that the court's mere consideration of his decision constituted impermissible punishment. Id., pp. 64–67. Furthermore, it is misleading to suggest that, because our Supreme Court in *Kelly* required the defendant to prove that his sentence had been augmented impermissibly, the court did not recognize and resolve an issue squarely addressing whether the court impermissibly had *considered* the defendant's decision to proceed

The other aspect of the defendant's·sentencing claim presents an even weaker case for the exercise of our supervisory authority. That aspect of the claim is that the court deprived him of his right to due process when it considered at the time of sentencing the knife that was a full exhibit at trial. On appeal, the defendant claimed that the court improperly admitted the knife into evidence, and this court rejected that evidentiary claim on its merits. *State* v. *Elson*, supra, 116 Conn. App. 212–19. This sentencing claim is not an opportunity to relitigate that evidentiary claim. Furthermore, it defies logic for the defendant to suggest that the court may not consider the evidence presented at trial in imposing its sentence. Simply put, the claim that the court improperly considered this properly admitted evidence at the time of sentencing does not, to any degree, implicate concerns related to the fairness of the defendant's trial, let alone the fair administration of justice in general. Accordingly, we decline the defendant's request that we exercise our supervisory authority with regard to either aspect of the sentencing claim.

The judgment is affirmed.

In this opinion DiPENTIMA, C. J., and GRUENDEL, BEACH and ALVORD, Js., concurred.

to trial. As set forth earlier in this opinion, the Supreme Court in *Kelly* framed the issue as whether "the trial court violated [the defendant's] federal and state constitutional rights by improperly considering, at the sentencing phase of the proceedings, the defendant's decision to proceed to trial." *State* v. *Kelly*, supra, 256 Conn. 79–80. This statement of the issue precedes the court's analysis in *Kelly* and, in our view, plainly reflects that the court understood the issue to encompass whether the trial court improperly had considered the defendant's decision. This framing of the issue was entirely consistent with the issue presented to the Supreme Court by the defendant in *Kelly*. We reiterate that, in its analysis of this issue, our Supreme Court rejected this rationale and required the defendant to demonstrate that impermissible augmentation of the sentence had occurred. Id., 83–84.

Because the relevant claim in *Kelly* is remarkably similar to that presented here, we adhere to *Kelly*'s analysis of the claim. The exercise of supervisory authority does not afford this court an opportunity to reexamine or reevaluate controlling precedent from our state's highest court. See *Stuart* v. *Stuart*,

ROBINSON, J., concurring. I concur with the majority that the trial court's sentencing of the defendant, Zachary Jay Elson, should be affirmed but write separately to emphasize the point that a trial court should never take into consideration whether a person exercised his or her constitutional right to trial by jury and also to dispel any suggestion that this court's decision represents tacit approval for such a practice. I share the same concern expressed by Judge Bishop in his concurring and dissenting opinion, namely, that such a practice by a court has the potential to chill a defendant's decision to exercise his or her fundamental right to trial by jury. Under the facts of the present case, however, I would not invoke our supervisory authority to reach the defendant's sentencing claim. Accordingly, I concur in the judgment of the majority.

At the outset, I believe it necessary to address why a trial court should not consider among its factors at sentencing whether a defendant chose to exercise his or her constitutional right to trial by jury. In our judicial system, the court plays a crucial role in promoting "public confidence in the integrity . . . of the judiciary." (Internal quotation marks omitted.) *Swenson* v. *Dittner*, 183 Conn. 289, 297, 439 A.2d 334 (1981). This role requires the court to assume the duties both of "impartial and detached" decision maker; *State* v. *Floyd*, 10 Conn. App. 361, 369, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126 (1987); and "minister of justice." *Cameron* v. *Cameron*, 187 Conn. 163, 169, 444 A.2d 915 (1982).

To fulfill its duty as impartial and detached decision maker, the court must avoid the appearance of bias or

supra, 297 Conn. 45–46. Accordingly, we disagree that any departure from *Kelly* is warranted here.

impropriety during proceedings. See id. ("[T]he trial judge should be cautious and circumspect in his language and conduct. . . . A judge should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness . . . ." [Citation omitted; internal quotation marks omitted.]). To fulfill its duty as minister of justice, the court must act to safeguard a criminal defendant's constitutional rights during criminal proceedings. *State* v. *Phidd*, 42 Conn. App. 17, 33, 681 A.2d 310 ("The United States and Connecticut constitutions have afforded individuals certain minimum rights in criminal proceedings. The trial court safeguards these rights and ensures that none is violated during a criminal prosecution."), cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997). Therefore, the public's confidence in the judiciary directly correlates to the public's perception as to whether the court is fulfilling its duties. Consequently, any action by the court suggesting that it has strayed from these duties has the effect of undermining the public confidence in the judiciary.

When a court considers a defendant's exercise of a constitutional right in a nonneutral manner, such as a factor used at sentencing, it crosses that fine line that separates proper and improper administration of justice; see *State* v. *Floyd*, supra, 10 Conn. App. 369; and gives the impression that the court has strayed from its duty to safeguard the constitutional rights of the criminal defendant. By taking such factors into consideration during sentencing, a court can send a powerful message that a criminal defendant has the *ability* to exercise a constitutional right but the *consequences* may be less than favorable. In effect, by taking away the defendant's ability to decide freely whether to exercise a constitutional right, the court fails to safeguard the right and, thus, fails to fulfill one of its duties. As

a result, the criminal defendant becomes less willing to exercise his or her fundamental right and the public loses confidence in the integrity of the judiciary.

With this being said, I agree with Judge Bishop that it "will have a chilling effect on a defendant's exercise of [his right to trial by jury]" if the trial court can consider the defendant's choice as "a significant sentencing factor . . . ." Judge Bishop and I reach the proverbial fork in the road, however, on the issue of whether we should review the defendant's claim in the present case. The main issue of contention centers on whether this court should exercise its supervisory authority to protect the integrity of the judiciary.

The defendant asks this court to exercise its supervisory power to review his sentencing claim because, as he contends, the trial court improperly considered "the fact that he proceeded to trial rather than accept a plea bargain extended by the state" as a significant factor during sentencing. In support of his contention, the defendant relies solely on the following statement made by the court during sentencing: "We've all heard the defendant's apology. I don't know how sincere it is, but it is certainly unfortunate that it comes so late in the process. If the defendant had been truly apologetic, he wouldn't have put the victim through the trial. To a large extent, it seems to me that the defendant's apology represents thinking of himself rather than the victim."

Determining whether this court should exercise its supervisory power to review the defendant's claim requires us to take a closer look at the doctrine of supervisory authority. "In certain instances, *dictated by the interests of justice*, we may, sua sponte, exercise our inherent supervisory power to review an unpreserved claim that has not been raised appropriately under [*State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989)] or [the] plain error [doctrine]." (Emphasis

added.) *State* v. *Ramos*, 261 Conn. 156, 172 n.16, 801 A.2d 788 (2002). "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . The standards that [are] set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law . . . . Rather, the standards are flexible and are to be determined in the interests of justice. . . . [O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle. . . . [T]he integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers." (Citation omitted; internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 332–33, 715 A.2d 1 (1998). "Our supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts." *State* v. *Hines*, 243 Conn. 796, 815, 709 A.2d 522 (1998).

"Ordinarily, our supervisory powers are invoked to enunciate a rule that is not constitutionally required but that we think is preferable as a matter of policy. . . . As our Supreme Court explained, [s]upervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . At the same time, [a]lthough [w]e previously have exercised our supervisory powers to direct trial courts to adopt judicial procedures . . . we also have exercised our authority to address the result in individual cases . . . because [certain] conduct, although not rising to the level of constitutional magnitude, is unduly offensive to the maintenance of a sound judicial process." (Citations omitted; internal quotation marks omitted.) *Somers* v.

*Chan,* 110 Conn. App. 511, 533, 955 A.2d 667 (2008). Thus, the supervisory power has been invoked in at least two circumstances:[1] (1) to announce a new rule of procedure that the court believes is necessary to protect the integrity of the judiciary; see, e.g., *State* v. *Gore,* 288 Conn. 770, 787–88, 955 A.2d 1 (2008) (supervisory power invoked to adopt rule that "when a defendant . . . indicates that he wishes to waive a jury trial in favor of a court trial in the absence of a signed written waiver by the defendant, the trial court should engage in a brief canvass of the defendant in order to ascertain that his or her personal waiver of the fundamental right to a jury trial is made knowingly, intelligently and voluntarily"); *State* v. *Ledbetter,* 275 Conn. 534, 575–80, 881 A.2d 290 (2005) (supervisory power invoked to adopt rule requiring jury instruction where identification procedure fails to provide adequate warning to witness, unless no significant risk of misidentification), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006); and (2) to reverse a judgment of conviction in the interest of justice. See, e.g., *State* v. *Ubaldi,* 190 Conn. 559, 572, 575, 462 A.2d 1001 (supervisory power invoked to reverse judgment of conviction on basis of prosecutorial impropriety), cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983).

In the present case, the defendant asks this court to reverse the judgment and remand his case for resentencing in the interest of justice. Although the defendant did not preserve his claim at the trial court level, he nevertheless argues that this court may invoke its supervisory authority sua sponte to consider his claim. The

---

[1] Our Supreme Court also has exercised its supervisory authority in other circumstances, such as to relax the strict application of the appellate rules; see *State* v. *Reid,* 277 Conn. 764, 778–79, 894 A.2d 963 (2006); and to reach a defendant's due process claim even though the claim fell outside the purview of the statute under which he was appealing. See *State* v. *Revelo,* 256 Conn. 494, 502–504, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001).

case relied on by the defendant for the proposition that this court may invoke its supervisory authority sua sponte to consider his claim is *State* v. *Ramos*, supra, 261 Conn. 156, a case very similar to the present case.[2]

Although *Ramos* found that an appellate court may exercise its supervisory power sua sponte to reverse a judgment of conviction in the interest of justice, it does not change the requirement that, in order to consider an alleged error, whether preserved or unpreserved, the court must have an adequate record before it upon which to base its decision. See *State* v. *Chambers*, 296 Conn. 397, 414, 994 A.2d 1248 (2010). As this court has long recognized: "Speculation and conjecture have no place in appellate review. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claim] would be entirely speculative." (Internal quotation marks omitted.) *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005); see also *State* v. *Brunetti*, 279 Conn. 39, 63, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). Furthermore, "it is

[2] In *Ramos*, the defendant was convicted of, among other crimes, two counts of murder. *State* v. *Ramos*, supra, 261 Conn. 158. On appeal, the defendant argued that "the trial court improperly instructed the jury as to the provocation exception to the justification of self-defense." Id., 169. In the body of the opinion, our Supreme Court determined that the defendant had not properly preserved this claim and, furthermore, that he was not entitled to review under *Golding* or the plain error doctrine because he had not "affirmatively . . . request[ed] review under these doctrines." Id., 171. Notwithstanding this finding, the court stated, in a footnote, that "[i]n certain instances, dictated by the interests of justice, we may, sua sponte, exercise our inherent supervisory power to review an unpreserved claim that has not been raised appropriately under the *Golding* or plain error doctrines." Id., 172 n.16. After extensive review of the jury instruction, however, the court held that "the interests of justice do not require that we review the defendant's claim regarding the provocation instruction." Id.

the [defendant's] burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the [defendant] to move for an articulation . . . where the trial court has failed to state the basis of a decision . . . . In the absence of any such attempts, we decline to review [the] issue." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232, 828 A.2d 64 (2003).

Our Supreme Court's recent decision in *State* v. *Chambers*, supra, 296 Conn. 397, is instructive as to whether this court should invoke its supervisory powers in the present case. In *Chambers*, the defendant was charged with one count of assault in the first degree, one count of robbery in the first degree and one count of conspiracy to commit robbery in the first degree. Id., 400–401. Six days after the start of a jury trial, defense counsel requested that the defendant be permitted to testify in the narrative, if the defendant elected to testify, because of ethical concerns. Id., 401. The following day, the trial court held an in-chambers meeting regarding the request at which only defense counsel and the prosecutor were present. Id. Afterward, the trial court held a hearing, at which the defendant was present, and granted defense counsel's motion to allow the defendant to testify in the narrative. Id., 401–402. The defendant testified in the narrative and subsequently was convicted of all three charges. Id., 406–407, 409–10.

On appeal, the defendant claimed that he was denied due process of law when he was excluded from the in-chambers meeting, arguing that the meeting was a critical stage of the proceeding at which he had a constitutional right to be present. Id., 410–11. Because the defendant had not raised the issue at the trial court level, he sought review under both *Golding* and the court's supervisory authority. Id.

In reviewing the defendant's claim, our Supreme Court stated that "whether a particular [in-chambers] proceeding qualifies as a critical stage of the prosecution is a necessarily fact intensive inquiry. . . . [I]t is imperative that the record reveal the scope of discussion that transpired." (Internal quotation marks omitted.) Id., 412–13. Thereafter, the court found that the record was deficient and did not permit review of the claim because "the only evidence *in the record* regarding what transpired in chambers consist[ed] of two passing references by [the trial court] indicating merely that there had been such a meeting." (Emphasis in original.) Id., 413. The court noted that the defendant had the burden of providing an adequate record and that he had failed to request an articulation or rectification of the record. Id., 414. On the basis of the limited record, the court held that it would "not speculate about the constitutional significance of the in-chambers discussions or reverse the defendant's conviction on the basis of that speculation. Accordingly, irrespective of whether review is sought under *Golding* or pursuant to our supervisory authority, we conclude that the record is inadequate for us to review the defendant's constitutional challenge to his absence from that proceeding." Id.

Similarly, in the present case, pursuant to *State* v. *Kelly*, 256 Conn. 23, 82, 770 A.2d 908 (2001), review of claims that a trial court augmented the defendant's sentence "as a punishment for exercising his or her constitutional right to a jury trial [is] . . . based on the totality of the circumstances. . . . [T]he burden of proof in such cases rests with the defendant." Therefore, in order to review the defendant's claim, this court must consider the facts in the record to discern whether, based on the totality of the circumstances, the court improperly enhanced the defendant's sentence.

Under the present facts, however, we are unable to evaluate the totality of the circumstances because the defendant did not provide this court with an adequate record upon which to review his claim. The only evidence provided in the record regarding the court's consideration of the defendant's choice to exercise his constitutional right is the statement set forth previously, which was made following the victim's statement and the defendant's statement to the court. As evidenced by the well reasoned opinions in this case, however, it is clear to me that reasonable minds can disagree as to whether the court's statement concerning the defendant's remorse actually was factored into the court's sentence. More specifically, the court's statement is simply ambiguous and does not disclose whether the court considered the defendant's exercise of his constitutional right as a sentencing factor or merely opined as to the defendant's sincerity. Consequently, I do not believe that we should exercise our supervisory authority when the record before us only indicates that there is but the possibility that the trial court penalized the defendant for taking advantage of his constitutional right to trial by jury. Furthermore, although it may have been awkward for the defendant, I do not agree that the defendant's preservation of the issue would have been extraordinarily difficult and would have served no useful purpose.

In light of the uncertainty, it was incumbent on the defendant to seek an articulation from the court that set forth the factors it considered when it imposed the sentence. In the absence of such articulation, any attempt on our part to discern what weight, if any, the court accorded to the defendant's exercise of his fundamental right would require us to speculate, a practice in which this court will not engage.

For the foregoing reasons, I respectfully concur in the majority opinion.

DUPONT, J., concurring in part. I concur in the majority opinion and agree that the judgment of the trial court should be affirmed. I write separately to express my disagreement with the majority's interpretation of the meaning of "affirmative request" as used by our Supreme Court in order to determine whether a defendant can obtain review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), of a claimed constitutional deprivation that was not preserved at trial, and with the majority's decision to overrule in part *State* v. *Wright*, 114 Conn. App. 448, 969 A.2d 827 (2009).[1]

This appeal was first argued in the 2008–2009 court year before a three judge panel of this court and was the subject of a published opinion, *State* v. *Elson*, 116 Conn. App. 196, 975 A.2d 678 (2009). This court granted en banc reargument and reconsideration of the original *Elson* decision. The same briefs of the parties used in the original case were used in this case on reconsideration. On appeal, the defendant, Zachary Jay Elson, claimed in his main brief that the court considered improper factors at the time of his sentencing, thereby depriving him of his right to due process of law afforded by the federal constitution. He provided an excerpt of the transcript of the sentencing with citation to the specific statements that he claimed demonstrated that the trial court considered his decision to stand trial

---

[1] "[A] court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it . . . ." (Internal quotation marks omitted.) *State* v. *Bowman*, 289 Conn. 809, 817, 960 A.2d 1027 (2008). Neither party in *Wright* petitioned our Supreme Court for review. I believe that *Wright* is logically and legally robust and does not contravene any Supreme Court or Appellate Court decision. See W. Horton & K. Bartschi, "2009 Appellate Review," 84 Conn. B.J. 1, 13 (2010) (noting that "[i]n *State* v. *Wright*, [supra, 114 Conn. App. 448], the court held that the defendant need not cite *Golding* by name to invoke *Golding* review" but not commenting on soundness of that holding).

as a factor in his sentencing, thereby impermissibly punishing him for exercising a constitutional right. The defendant raised and adequately briefed the constitutional claim in his main brief. In its brief, the state argued that the defendant's claim was not reviewable because he had failed to preserve it at trial and had failed to invoke any doctrine of extraordinary review of the claim on appeal. In its brief, the state, explicitly arguing in the alternative, also analyzed the defendant's constitutional claim on its merits. The defendant requested review of this claim pursuant to *Golding* in his reply brief. In my opinion, the question is whether the defendant had made in his main brief an "affirmative request for review" pursuant to *Golding* and its progeny in order to obtain such review based on *Golding* itself and subsequent Supreme Court cases.

The author of the original *Elson* decision declined to review the unpreserved claim because the defendant did not cite *Golding*, or assert that his claim was not preserved for appellate review or otherwise "affirmatively request" review pursuant to *Golding* in his main brief. *State* v. *Elson*, supra, 116 Conn. App. 239–40. In a concurring opinion, I determined that the unpreserved claim was reviewable under *Golding* but that the claim failed to satisfy the third prong of *Golding* because the defendant failed to demonstrate that the alleged constitutional violation clearly existed and clearly deprived him of a fair trial. Id., 245 (*Dupont, J.*, concurring in part).[2]

---

[2] The third member of the original panel would have reached the issue by invoking our supervisory power over the administration of justice and would grant remand of this case to the trial court for resentencing. See *State* v. *Elson*, supra, 116 Conn. App. 246 (*Bishop, J.*, concurring in part and dissenting in part). My conclusion that the defendant failed to demonstrate that the alleged constitutional violation clearly deprived him of a fair trial should not be construed as my approval of the comments made by the judge at sentencing.

Upon a rehearing and a reconsideration of the review-ability of the sentencing issue, the majority has concluded that because the defendant did not "affirmatively request" *Golding* review of the unpreserved claim, he was not entitled to such review. The majority defines such an affirmative request as "nothing less than an explicit assertion and analysis in a party's main brief that explains that, if the reviewing court deems a particular claim to be unpreserved, that claim nonetheless is reviewable on appeal because the record is adequate to review the claim and it is a claim of constitutional magnitude." See part I of the majority opinion. Our Supreme Court has not, in any case of which I am aware, defined precisely or amplified what it meant by the phrase "affirmative request" for appellate review of an unpreserved constitutional claim, as originally used in *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002) ("[a] party is obligated . . . affirmatively to request review under [*Golding*]"). It is my hope that our Supreme Court will elucidate the phrase in order that this court and the Connecticut bar can know what may be needed, if anything, to implement that court's decision in *Golding*. Specifically, our Supreme Court has not yet decided whether the phrase is intended to expand or modify the original directions of *Golding*, namely, its first two prongs. I depart from the majority insofar as it interprets the "affirmative request" requirement as requiring anything more than satisfying the first two prongs of *Golding* itself. Accordingly, I would not overrule *State* v. *Wright*, supra, 114 Conn. App. 448.

*Golding* followed the case of *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973). In *Evans*, our Supreme Court established review for unpreserved claims that constituted " 'exceptional circumstances' . . . ." Id., 70. The court recognized "two situations that may constitute 'exceptional circumstances' such that newly raised claims can and will be considered

by [an appellate] court. The first is . . . where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. . . . The second 'exceptional circumstance' may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." (Citation omitted.) Id.

These exceptional circumstances were intended to strike the proper balance between protecting the constitutional rights of defendants and the court's interest in reviewing only properly preserved claims, thus avoiding trial by ambuscade of the trial court. Claimed constitutional violations normally should be brought to the attention of the trial court, where they can be addressed and remedied. See *State* v. *Canales*, 281 Conn. 572, 581, 916 A.2d 767 (2007). Over time, the second "exceptional circumstance" came to be relied on in so many cases that it ceased to be exceptional. The rule in *Evans* made it difficult for the court to address the reviewability issue without actually reviewing the claim on its merits, thus resulting in a variety of approaches.[3] This court, for example, attempted to disentangle the issue of reviewability from the merits of the claim by adopting a four part approach in *State* v. *Thurman*, 10 Conn. App. 302, 305–306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987),[4] an approach that was cited

---

[3] See S. Sellers, "*State* v. *Golding*: A Standardless Standard?," 65 Conn. B.J. 245, 246–51 (1991).

[4] "We must ask a series of questions when an *Evans* claim is made and answer each in the affirmative before continuing to the succeeding question. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. . . .

"First, does the defendant raise an issue which, by its terms, implicates a fundamental constitutional right? . . . Second, is the defendant's constitutional claim adequately supported by the record? . . . Third, was there, in fact, based on the record, a deprivation of a constitutional right of a criminal defendant? . . . Fourth, did the deprivation deny the defendant a fair trial, thereby requiring that his conviction be set aside?" (Citations omitted; internal quotation marks omitted.) *State* v. *Thurman*, supra, 10 Conn. App. 306–307.

favorably by our Supreme Court in *State* v. *Bailey*, 209 Conn. 322, 329 n.4, 551 A.2d 1206 (1988), and was employed by this court in numerous decisions.[5]

In 1989, our Supreme Court acknowledged that the methodologies used under the *Evans* standard were inconsistent and, in *Golding*, "articulate[d] guidelines designed to facilitate a less burdensome, more uniform application of the present *Evans* standard in future cases involving alleged constitutional violations that are raised for the first time on appeal." *State* v. *Golding*, supra, 213 Conn. 239.[6] The court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are

[5] See, e.g., *State* v. *Robinson*, 14 Conn. App. 40, 539 A.2d 606, cert. denied, 488 U.S. 899, 109 S. Ct. 244, 102 L. Ed. 2d 233 (1988); *State* v. *Flynn*, 14 Conn. App. 10, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988); *State* v. *Arroyo*, 13 Conn. App. 687, 539 A.2d 581, cert. denied, 208 Conn. 805, 545 A.2d 1103 (1988); *State* v. *Vega*, 13 Conn. App. 438, 537 A.2d 505 (1988); *State* v. *Peterson*, 13 Conn. App. 76, 534 A.2d 1237 (1987); *State* v. *Griffin*, 12 Conn. App. 221, 530 A.2d 210 (1987); *State* v. *Day*, 12 Conn. App. 129, 529 A.2d 1333 (1987); *State* v. *Diorio*, 12 Conn. App. 74, 529 A.2d 1320, cert. denied, 205 Conn. 813, 532 A.2d 587 (1987), cert. denied, 484 U.S. 1065, 108 S. Ct. 1025, 98 L. Ed. 2d 990 (1988); *State* v. *Foshay*, 12 Conn. App. 1, 530 A.2d 611, cert. denied, 205 Conn. 813, 532 A.2d 587 (1987); *State* v. *McKenna*, 11 Conn. App. 122, 525 A.2d 1374, cert. denied, 205 Conn. 806, 531 A.2d 939 (1987); *State* v. *Huff*, 10 Conn. App. 330, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987).

[6] In *State* v. *Golding*, supra, 213 Conn. 233, our Supreme Court reversed a decision by this court. Our court had concluded that the defendant's claim was not reviewable under *Evans* because it failed to satisfy the second question of *Thurman*, as it was not "truly of constitutional proportions, but [was] simply characterized by her as such." *State* v. *Golding*, 14 Conn. App. 272, 279, 541 A.2d 509 (1988), rev'd, 213 Conn. 233, 567 A.2d 823 (1989). The issue was whether the amount obtained by fraud was an essential element of the crime charged, and the Supreme Court concluded that it was. *State* v. *Golding*, supra, 238. The court stated: "[T]he Appellate Court erred by refusing to review the defendant's claim since she proffered a constitutional claim and the record was clearly adequate to review that claim." Id. Our Supreme Court thus admonished this court that review of an unpreserved constitutional deprivation should be granted if a defendant has made a constitutional claim and presented a record adequate for such a review.

met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. Case law is clear that "[t]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Whitford*, 260 Conn. 610, 621, 799 A.2d 1034 (2002).

In the present matter, the majority concludes that our Supreme Court later added a gloss to *Golding* that an appellant's entitlement to a *Golding* review must be requested affirmatively in the main brief. This gloss is traced to *State* v. *Waz*, 240 Conn. 365, 371 n.11, 692 A.2d 1217 (1997), in which the court admonished: "[D]efendants who seek consideration of unpreserved constitutional claims [on appeal] . . . bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding*." In *Waz*, the court addressed the defendant's unpreserved constitutional claim, despite the defendant's failure to make an express reference to the guidelines specified in *Golding*. In *State* v. *Ramos*, supra, 261 Conn. 170–71, the court concluded that the defendant had not preserved his objection to a particular jury instruction. The court declined to review the claim, relying in part on *State* v. *Waz*, supra, 371 n.11, stating: "[A] defendant may prevail on an unpreserved claim under *Golding* or the plain error doctrine. . . . A party is obligated, however, affirmatively to request review under these doctrines." (Citations omitted.) *State* v. *Ramos*, supra, 171. This was the first time our Supreme Court expressly

associated an "affirmative request" requirement with a *Golding* review of unpreserved claims. Although the majority in the present case has cited numerous instances since *Ramos* in which our Supreme Court has reiterated that an appellant has a duty to "affirmatively request" *Golding* review, that court has not expressly defined what form such an "affirmative request" must take.[7]

Our Supreme Court has come close, however, to equating an affirmative request with compliance with the first two prongs of *Golding*. In *State* v. *Bowman*, 289 Conn. 809, 815, 960 A.2d 1027 (2008), the court stated: "[I]f a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding*, [supra,

---

[7] See *In re Jan Carlos D.*, 297 Conn. 16, 20 n.10, 997 A.2d 471 (2010) (declining to review respondent's unpreserved claim of constitutional due process violation because *Golding* review not requested); *In re Melody L.*, 290 Conn. 131, 167, 962 A.2d 81 (2009) (declining to review unpreserved constitutional claim for trial by jury in termination of parental rights case when appellant "merely asserts in one sentence that her claim is subject to *Golding* review without providing any analysis of the four prongs"); *State* v. *McKenzie-Adams*, 281 Conn. 486, 533 n.23, 915 A.2d 822 (declining to review unpreserved constitutional claim when defendant failed to brief entitlement to *Golding* review in main brief), cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007); *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 532, 876 A.2d 1178 (2005) (declining to review unpreserved claim of constitutional due process violation when "the petitioner makes only a passing reference to *Golding* for the first time in his reply brief and fails to brief his entitlement to *Golding* review").

But see *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 68–69, 951 A.2d 520 (2008) (*Palmer, J.*, concurring), in which two justices would have reviewed the defendant's unpreserved constitutional claim under *Golding* because the state had briefed and argued the issue and the defendant made all of the same arguments he would have made had he cited *Golding* in his main brief. See also *State* v. *Alvarez*, 216 Conn. 301, 315–16, 579 A.2d 515 (1990) (court presumed defendant sought *Evans-Golding* review); *State* v. *Moye*, 214 Conn. 89, 97–98, 570 A.2d 209 (1990) (same).

Two recent cases, *State* v. *Tomas D.*, 296 Conn. 476, 496 n.28, 995 A.2d 583 (2010), and *State* v. *Chambers*, 296 Conn. 397, 410–11, 994 A.2d 1248 (2010), leave the phrase "affirmative request for review" undefined.

213 Conn. 239–40].” (Internal quotation marks omitted.) Immediately after these words, the court quotes *Ramos* as follows: “A party is obligated . . . affirmatively to request review under these doctrines. *State* v. *Ramos*, supra, 171 . . . .” (Citation omitted; internal quotation marks omitted.) *State* v. *Bowman*, supra, 815. It would appear that the word “doctrines” relates to the plain error doctrine *or* the rule set forth in *Golding*. Furthermore, after stating that a party is obligated affirmatively to request review, the court, citing *Waz*, explains that “defendants who seek consideration of unpreserved constitutional claims [on appeal] . . . bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding* . . . .” (Internal quotation marks omitted.) Id. The plain meaning of these words appears to equate “affirmatively” with establishing a right to review under the guidelines of *Golding*. Furthermore, if “affirmative” is equated with a specific reference to *Golding* or an explicit plea for review pursuant to *Golding*, I believe that the philosophy underlying the case would be compromised.

Regardless of the meaning of the phrase “affirmative request,” Connecticut case law has remained essentially unchanged. The rationale underlying both *Evans* and *Golding* remains that fundamental constitutional rights are of such importance that appellate courts should review claims of alleged constitutional violations even when a defendant fails to take an exception to the alleged violation at the trial court level. Much like requests for review pursuant to *Evans*, requests for *Golding* review of unpreserved claims of constitutional magnitude have proliferated like kudzu[8] in our appellate

[8] Kudzu (pueraria montana) is generally defined as a rapid growing vine, native to Japan and China, with dense foliage consisting of woody, hairy stems and large, compound leaves. Once established, kudzu plants grow rapidly, extending as much as sixty feet per season at a rate of about one foot per day. It is considered an invasive vine present in the southern and eastern portions of the United States. See United States Dept. of Agriculture, Forest Service, “Weed of the Week,” October 12, 2004, available at

system. Because of the ubiquitous presence of *Golding* review in our jurisprudence, it would be difficult for the state or the reviewing court to fail to perceive that such a review of an unpreserved constitutional issue is sought. If the defendant has provided an adequate record for review and has demonstrated through adequate briefing in his main brief that his unpreserved claim alleges a claim of constitutional magnitude, that is, the violation of a constitutional right, it is my belief that the defendant has alerted opposing counsel and the reviewing court sufficiently to be equated with and tantamount to a request for *Golding* review.

This is the approach employed in *State* v. *Wright,* supra, 114 Conn. App. 448. In that case, the defendant claimed a constitutional violation in his main brief and provided an adequate record for review. Id., 456. The state in its brief argued that the claim was unreviewable because it was not preserved at trial and the defendant did not request review pursuant to *Golding.* Id. The state in its brief argued in the alternative that if the court found the claim to be reviewable, the claim failed on its merits. Id., 456–57. *Wright* is indistinguishable from *Elson* in these respects. As noted in *Wright:* "This court's ability to *review* a claim, and the defendant's ability to *prevail* on his claim, are two entirely different concepts. . . . As the Supreme Court stated in *Golding,* the defendant bears the responsibility for providing a record that is adequate for review of his claim and demonstrating that his claim is indeed a violation of a fundamental constitutional right, thereby satisfying the first and second prongs. . . . Should the defendant do so, [an appellate court] will [then] review [the claim] and arrive at a conclusion as to whether . . . the third and fourth prongs [are satisfied]." (Citations omitted; emphasis in original; internal quotation marks omitted.)

---

http://na.fs.fed.us/fhp/invasive_plants/weeds/kudzu.pdf (last visited November 16, 2010).

Id., 458. This court held in *Wright*: "[It is not] mandatory for a defendant to cite *Golding* to obtain review of an unpreserved claim of a constitutional deprivation at trial, [but] we do require that a defendant present a record that is adequate for review and affirmatively [demonstrate] that his claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) Id., 463.

Nothing in the approach in *Wright* is contrary to established Supreme Court precedent. The approach is wholly consistent with *State* v. *Waz*, supra, 240 Conn. 371 n.11, as it properly places on appellants who seek consideration of their unpreserved claims of constitutional magnitude the burden "of establishing their entitlement to such review under the guidelines enumerated in *Golding*." In addition, this approach promotes judicial economy, as it provides a lessened need for future habeas corpus petitions and other cases, both civil and criminal, that allege ineffective assistance of appellate counsel for failure to obtain appellate review of an unpreserved constitutional claim because counsel failed to "affirmatively request" *Golding* review, when counsel did provide an adequate record for review and adequately briefed an unpreserved claim of constitutional magnitude.

Our Supreme Court has not yet expressly defined an "affirmative request" as anything other than satisfying the first two prongs of *Golding*.[9] For these reasons, I do not believe that this court should overrule in part *State* v. *Wright*, supra, 114 Conn. App. 448, or should decline to review an unpreserved constitutional claim because of a lack of an "affirmative request" for review.

---

[9] The saga of *Golding* begins with *Evans* and is interspersed with many other decisions since *Golding* over the past twenty years, but the saga has not yet ended, and cannot end until our Supreme Court provides additional guidance.

I do, however, concur in the result reached by the majority opinion for the reasons stated in *State* v. *Elson*, supra, 116 Conn. App. 240–46 (*Dupont, J.*, concurring in part).

BISHOP, J., with whom LAVINE, J., joins, concurring in part and dissenting in part. Although I concur with the majority's affirmation of this court's earlier opinion affirming the judgment of conviction; see *State* v. *Elson*, 116 Conn. App. 196, 975 A.2d 678 (2009); I write separately because I believe the sentencing claim of the defendant, Zachary Jay Elson, raises a troubling issue warranting resentencing. The state claims, and the majority agrees, that we should not review the defendant's sentencing claim because the issue was unpreserved[1] and he did not seek review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), in his main brief. I agree with the majority that this court is bound by our Supreme Court's holdings regarding a party's obligation to affirmatively request extraordinary review and to do so in its main brief. Therefore, I concur with the majority opinion insofar as it overrules the analysis in *State* v. *Wright*, 114 Conn. App. 448, 455–64, 969 A.2d 827 (2009).[2] Unlike the majority, however, I

[1] I am constrained to agree with the majority that the issue is unpreserved. I believe, however, that it would have been extraordinarily difficult and of no practical value under these particular circumstances for counsel to have interrupted the court during its sentencing comments in order to effect any change in the sentence imposed because the court's comments revealed that it had already formulated its view tying together the defendant's absence of remorse with his exercise of the fundamental right to a trial.

[2] Although our Supreme Court has made it clear that *Golding* may not be invoked for the first time in a reply brief, the rationale behind those rulings is to prevent unfair surprise and to give the state the opportunity to fully respond to the defendant's claims. See *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997); *State* v. *Rosario*, 113 Conn. App. 79, 93, 966 A.2d 249, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009). In each of those cases, however, as in the present case, the defendant briefed the constitutional issue in his main brief, and the state, properly and thoroughly, briefed both the reviewability issue and the merits of the constitutional issue, fairly putting the rationale for this line of cases into question.

would reach the issue by invoking our supervisory power over the administration of justice in resolving the present appeal.[3] And because I believe that the defendant's constitutional rights were violated, I would remand this case to the trial court for resentencing.

"Appellate courts possess an inherent supervisory authority over the administration of justice. . . . The standards that [are] set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law . . . . Rather, the standards are flexible and are to be determined in the interests of justice. . . . [O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle. . . . [T]he integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . [O]ur supervisory powers are invoked only in the

I note, as does Judge Dupont, that the *Golding* opinion, itself, does not impose a procedural requirement that an appellant specifically request *Golding*-type review on appeal, but rather that any unpreserved constitutional claim, to be reviewable, must meet the requirements elucidated in *Golding*. However, as the majority has noted, our Supreme Court later added a gloss to *Golding* that an appellant's entitlement to *Golding* review must be argued in the main brief. Thus, although I find Judge Dupont's approach to the review of unpreserved constitutional claims completely sensible, I am bound to conclude, as does the majority, that we must follow the Supreme Court's gloss on *Golding*, which added procedural requirements for reviewability unstated in *Golding* itself.

It is noteworthy, in this regard, that in *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 951 A.2d 520 (2008), two justices concurred in the result while writing that they would have reviewed the defendant's unpreserved constitutional claim because the state was aware of the issue and had briefed and argued it, and the defendant made all of the same arguments he would have made if he had used the talismanic term *Golding* in his brief.

[3] I believe that we should exercise our supervisory authority to review only the defendant's claim that the court improperly equated his exercise of his right to trial to his sense of remorse. I agree with the majority that the defendant's claim that the court impermissibly considered at sentencing the knife that was a full trial exhibit does not warrant extraordinary review.

rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Mukhtaar*, 253 Conn. 280, 290 n.11, 750 A.2d 1059 (2000); see also Practice Book §§ 60-1 and 60-2. Additionally, "[i]n certain instances, dictated by the interests of justice, we may, sua sponte, exercise our inherent supervisory power to review an unpreserved claim that has not been raised appropriately under the *Golding* or plain error doctrines." (Internal quotation marks omitted.) *State* v. *Jones*, 281 Conn. 613, 618 n.5, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007).

In *State* v. *Revelo*, 256 Conn. 494, 504, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001), our Supreme Court held that supervisory review is sometimes necessary if disposing of a touchstone due process claim on procedural grounds would be construed as tacit approval of the alleged constitutional violation. In *Revelo*, the trial court announced a plea offer of eight years, then withdrew that offer when the defendant asserted his right to a judicial determination of his then pending motion to suppress. The court informed the defendant that if the motion was denied and he decided to plead guilty, he would be sentenced to nine years, which is what occurred. Id., 497–99. On appeal, the defendant claimed that his constitutional right to due process was violated because the court increased his sentence on the basis of his decision to seek adjudication of his motion to suppress. After this court declined to review the claim, our Supreme Court reversed, exercising its supervisory power for three reasons. First, it held that the significance of the due process claim transcended the particular case because it concerned the proper role of trial judges in plea bargaining. Id., 503. Second, the undisputed facts of the case bore out the defendant's claim of a constitutional

violation. Id., 503–504. Third, the Appellate Court had indicated in dictum that the challenged practice was permissible, which needed to be refuted by the Supreme Court, "lest it be construed by our trial judges as approval of a practice that violates principles of due process." Id., 504.

The criteria enunciated in *Revelo* apply in the present case. Here, the defendant contends that the trial court impermissibly equated the exercise of his constitutional right to trial with the absence of remorse. Given the precedential impact of appellate decision making, our tacit acceptance of this practice likely could have the effect of fettering the right of a criminal defendant to require the state to prove guilt beyond a reasonable doubt lest that exercise later be viewed by a sentencing court as evidence that the defendant lacked remorse. Thus, I believe this claim transcends the circumstances of this case, "present[ing] one of the rare exceptions to the general rule of unreviewability." Id., 503. Accordingly, I believe that this is an appropriate case to invoke our supervisory power to address the defendant's claim.

Turning to the merits of the defendant's claim, the record in the case at hand reveals that, at sentencing, the court stated: "We've all heard the defendant's apology. I don't know how sincere it is, but it is certainly unfortunate that it comes so late in the process. If the defendant had been truly apologetic, he wouldn't have put the victim through the trial. To a large extent, it seems to me that the defendant's apology represents thinking of himself rather than the victim."[4]

The defendant claims that these comments reveal that the court improperly considered at sentencing his

---

[4] It is noteworthy that immediately preceding the defendant's allocution, the victim made an impassioned and moving statement to the court in which she discussed how the trial had further traumatized her by causing her and her loved ones to relive the events of the defendant's criminal behavior.

decision to go to trial as evidence of his lack of remorse and that his sentence was improperly elongated by this consideration.[5] In response, the state argues that the court did not improperly consider the defendant's election to go to trial as a sentencing factor and that, even if the court did so, the defendant has not met the burden of persuasion enunciated by our Supreme Court in *State v. Kelly*, 256 Conn. 23, 770 A.2d 908 (2001), that the court's improper consideration did, in fact, elongate his sentence.[6]

I begin with the elementary principle that a defendant's right to trial is among the most cherished constitutional rights. As noted by the United States Supreme

[5] The defendant was convicted of assault in the first degree and unlawful restraint in the first degree. He was found not guilty of attempt to commit assault in the first degree. He was also charged, in a part B information, with the commission of these crimes while out on bond for unrelated charges. He was sentenced on the assault conviction to a period of incarceration of twenty-five years, suspended after twenty years. On the unlawful restraint conviction he received a concurrent five year sentence. The total effective sentence of twenty-five years suspended after twenty years incarceration represented an enhancement of five years due to the part B conviction. Because Connecticut does not have sentencing guidelines and, to my knowledge, the judicial branch does not maintain comparative sentencing statistics, one cannot say with any accuracy whether the substantial sentence received by the defendant is outside the norm.

[6] Except in the most blatant case, I do not think that a defendant could ever demonstrate that the court actually lengthened a sentence because he or she elected a trial. Although decisional law is not uniform in this regard, some courts have taken the view that where the record is equivocal as to whether the sentencing court considered a defendant's decision to go to trial, the matter should be remanded for resentencing. For example, in *United States* v. *Hutchings*, 757 F.2d 11, 13 (2d Cir.), cert. denied, 472 U.S. 1031, 105 S. Ct. 3511, 87 L. Ed. 2d 640 (1985), resentencing was ordered where the court commented, after trial, that the trial had been a "total waste of public funds and resources . . . there was no defense in this case. This man was clearly and unquestionably guilty, and there should have been no trial." (Internal quotation marks omitted.) And in *Johnson* v. *State*, 679 So. 2d 831, 832 (Fla. App. 1996), the panel voted two to one for resentencing where the trial court stated during sentencing, "I will be very candid, what I see is an absolutely indefensible case by someone who has a felony record that stretches off into the distance, who had an indefensible case and put us through going through a whole trial, I guess so he could talk about it.

Court: "Although some are prone to overlook it, an accused's right to trial by a jury of his fellow citizens when charged with a serious criminal offense is unquestionably one of his most valuable and well-established safeguards in this country." *Green* v. *United States*, 356 U.S. 165, 215, 78 S. Ct. 632, 2 L. Ed. 2d 672 (1958). Accordingly, it is impermissible to penalize a defendant for standing trial instead of pleading guilty. *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) ("[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort"). Because this right is a fundamental one, we must be particularly vigilant in circumstances in which the right may be in peril. One such circumstance may arise at sentencing. One court has commented, "courts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice." *United States* v. *Stockwell*, 472 F.2d 1186, 1187 (9th Cir.), cert. denied, 411 U.S. 948, 93 S. Ct. 1924, 36 L. Ed. 2d 409 (1973).[7]

In the majority of jurisdictions, a criminal defendant may not receive a harsher sentence solely or even partially because he exercised his right to trial. "The ratio-

---

When there was an offer on the table he decided to turn down. Now it's time to pay the piper." (Internal quotation marks omitted.)

[7] This admonition has particular applicability to a system that is almost completely reliant on the plea bargaining process for the disposition of criminal cases. The biennial report of the judicial branch reveals that in the 2004-2005 fiscal year, the Superior Court disposed of 3323 part A criminal cases, only 173 (5.2 percent) by trial, and in the 2005-2006 fiscal year, there were 3049 criminal dispositions, 165 (5.4 percent) by trial. In 2006-2007, there were 3382 criminal dispositions, 137 (4.1 percent) by trial and, in 2007-2008, 2843 criminal dispositions, 146 (5.1 percent) by trial. Where disposition by trial is relatively rare, it is even more important to public confidence in our judicial system, if not to due process itself, that the court not take into consideration at sentencing the rare exercise of the right of the defendant to require the state to prove its case at trial.

nale behind the principle is that the coercion or the inducement casts a chill over the exercise of guaranteed fundamental constitutional rights." *Fermo* v. *State*, 370 So. 2d 930, 932 (Miss. 1979). Many courts have a "per se" rule that it is impermissible to give this factor any weight at sentencing. For example, the Supreme Court of Iowa has concluded that "the fact a defendant has exercised the fundamental and constitutional right of requiring the state to prove at trial his guilt as charged and his right as an accused to raise defenses thereto is to be given *no weight* by the trial court in determining the sentence to be imposed after the defendant's guilt has been established." (Emphasis added.) *State* v. *Nichols*, 247 N.W.2d 249, 255 (Iowa 1976). Similarly, the Court of Appeals of Maryland, in reviewing a claim that the court may have given impermissible consideration to a defendant's exercise of his right to trial, stated that "[a]ny doubt in this regard must be resolved in favor of the defendant. Accordingly, our part in the administration of justice requires that we find that a consideration of [the defendant's] failure to plead guilty was impermissible because a price may not be exacted nor a penalty imposed for exercising the fundamental and constitutional right of requiring the [s]tate to prove, at trial, the guilt of the [defendant] as charged." *Johnson* v. *State*, 274 Md. 536, 543, 336 A.2d 113 (1975); see also *State* v. *Hass*, 268 N.W.2d 456, 463–65 (N.D. 1978); *People* v. *Mosko*, 190 Mich. App. 204, 211, 475 N.W.2d 866 (1991), aff'd, 441 Mich. 496, 495 N.W.2d 534 (1992).

In place of a "per se" test, our Supreme Court, in *Kelly*, adopted a more flexible "totality of the circumstances" test. *State* v. *Kelly*, supra, 256 Conn. 83. Under this test, the mere inference that the exercise of the right to trial will not trigger a remand; rather, the totality of the circumstances must demonstrate that the exer-

cise of the right actually elongated the sentence.[8] In *Kelly*, for example, the record reflected that the sentencing court commented that it took into consideration "whether or not there was a plea or a complete trial . . . ." (Internal quotation marks omitted.) Id., 80. On review, our Supreme Court found that the comments under scrutiny did not, by themselves, demonstrate that the court elongated the defendant's sentence because he elected to go to trial. Rather, the Supreme Court opined, the trial court's comments served only as a reminder to the defendant that the court could have shown leniency if the defendant had acknowledged guilt before the trial, but, instead, the defendant had forgone that opportunity in electing to go to trial. Id., 83–84.

I believe there are significant differences between the circumstances the court faced in *Kelly* and those we confront. In the present case, the court did not simply note that the defendant had forgone an opportunity for leniency. Rather, the court equated the defendant's exercise of the right to trial with the absence of remorse. Although the teaching of *Kelly* is that we must assess all of the circumstances, no part of *Kelly* requires us to give equal weight to the factors considered by the court. Thus, as in this case, I believe that if it is apparent

[8] In *Kelly*, the focus was on whether the court lengthened a defendant's sentence as punishment for exercising the right to trial. Other cases, however, focus on whether the court impermissibly took the defendant's exercise into consideration at sentencing. Because the issue was framed in *Kelly* as a claim that the court actually elongated the defendant's sentence as a consequence of his having exercised his right to trial, the Supreme Court on review responded in like manner. In fairness, I believe it would be nearly impossible to prove, except in the most blatant of circumstances, that a court actually elongated a sentence because the defendant put the state to its proof. On the other hand, the trial record may often be adequate to demonstrate whether the court improperly considered a defendant's election as a factor at sentencing. Because I view the defendant's claims herein as more the latter than the former, I do not believe we are bound by the outcome determination approach fashioned by *Kelly* in response to the particular claim made in that case.

that the court impermissibly considered, as a factor, the defendant's exercise of a fundamental right as proof of lack of remorse, that factor alone sufficiently taints the sentencing process to warrant resentencing.[9]

Clearly, a court may take a defendant's remorse or lack of it into consideration in imposing sentence. Indeed, it is the importance of remorse as a sentencing factor that heightens the risk that equating the exercise of a right to trial to a lack of remorse that may negatively affect a defendant's willingness to exercise this fundamental right. Our Supreme Court has stated: "Among the factors that may be considered by a court at a sentencing hearing are the defendant's demeanor and his lack of veracity and remorse as observed by the court during the course of the trial on the merits. See, e.g., *United States* v. *Grayson*, 438 U.S. 41, 47–48, 50–52, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978); *United States* v. *Rosenberg*, 806 F.2d 1169 (3d Cir. 1986), cert. denied, 481 U.S. 1070, 107 S. Ct. 2465, 95 L. Ed. 2d 873 (1987); *United States* v. *Roland*, 748 F.2d 1321, 1327 (2d Cir. 1984); *McClain* v. *United States*, 676 F.2d 915, 919 (2d Cir.), cert. denied, 459 U.S. 879, 103 S. Ct. 174, 74 L. Ed. 2d 143 (1982) . . . ." (Citation omitted.) *State* v. *Anderson*, 212 Conn. 31, 47–48, 561 A.2d 897 (1989). A trial court not only may mitigate the sentence of a truly remorseful defendant but also may aggravate the sentence to deter a remorseless defendant from reoffending. See, e.g., *State* v. *Eric M.*, 271 Conn. 641, 653–54, 858 A.2d 767 (2004) ("From the statements . . . the trial court reasonably could have drawn the inferences that the defendant was guilty, remorseless and

---

[9] See, e.g., *State* v. *Ambriez*, 2004-Ohio-5230, Docket No. L-03-1051 (Ohio App. September 24, 2004) (where trial court stated that " 'there's no genuine remorse, because we had to proceed to trial; and obviously with your statement there's no genuine remorse, all of which makes recidivism more likely, thus would tip the scales on the side of [a] prison term,' " Court of Appeals found that "the inference that [the] appellant's sentence was augmented because he chose to stand trial is unavoidable").

dangerous, and that he had little prospect for rehabilitation. . . . [T]hese conclusions properly may bear on sentencing." [Citation omitted.]). Given the significance of remorse as a sentencing factor, there is a heightened risk that the court's view of the defendant's decision to put the state to its proof was detrimental to the defendant at sentencing.[10]

Here, rather than assessing the sincerity of the defendant's remorse by reference to his demeanor as a witness or other behaviors, the court discounted his expression of remorse at sentencing on the basis of its timing, commenting that if he had been truly apologetic, he would not have put the victim through a trial. In doing so, I believe that the court impermissibly conflated the question of remorse with the exercise of a fundamental constitutional right. In arriving at this conclusion, I do not suggest that it is always impermissible for a court to consider, as a sentencing factor, the impact on a victim of being required to testify at trial, but, here, the court went beyond that consideration to conclude that the defendant's exercise of a fundamental constitutional right, itself, demonstrated a lack of remorse.[11] In

---

[10] To guard against this risk, the United States Sentencing Guidelines Manual (2010) (Sentencing Manual) for federal courts has drawn a bright line between the exercise of rights and lack of remorse. The section titled "Acceptance of Responsibility" allows a downward adjustment for remorse. U.S.S.G. § 3E1.1. Although this downward adjustment is not available to defendants who denied their guilt at trial, and thereby did not accept responsibility; id., commentary (2); the Sentencing Manual emphatically states that the trial judge may *not* make an inverse upward adjustment: "This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than . . . perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. . . ." U.S.S.G. § 3C1.1, commentary (2).

[11] I am not insensitive to the trauma realized by victims who must often relive the experiences of criminal acts inflicted upon them. To give consideration to a defendant who pleads guilty and thus saves the victim from having to testify is a hallmark of our plea bargaining system. See, e.g., *State* v. *Farnham*, 479 A.2d 887, 892 (Me. 1984) ("[The] defendant and others on his behalf were perfectly justified in seeking leniency on the basis of his

making this determination, I believe, the court impermissibly tainted the sentencing process, thereby entitling the defendant to be sentenced anew.

If a defendant's election for a trial can be considered, itself, as evidence of the absence of remorse, a significant sentencing factor, it does not take a leap of logic to conclude that such a determination by a sentencing court will have a chilling effect on a defendant's exercise of this most fundamental constitutional right. In a

claimed repentance and remorse; but at the same time the sentencing justice could fully evaluate the sincerity of those claims only by considering [the] defendant's whole course of conduct. . . . Although [the] defendant had an absolute right to a trial . . . he cannot escape the fact that his exercise of those rights are probative of his attitude towards the victim and society."); *State* v. *Tiernan*, 645 A.2d 482, 487 (R.I. 1994) ("[i]n the face of [the] defendant's plea for leniency, the trial justice's consideration of [the] defendant's false testimony and the impact of the trial upon the victim was proper as these factors related to his prospects for rehabilitation"). But the coin is *not exactly two-sided. In a just system, elongation of a sentence from the* norm cannot be the flip side of leniency from the norm.

Ensuring the integrity of such a system is no simple task. Obviously, any chilling effect may be reduced if the trial court articulates the difference between denying leniency and increasing punishment. See, e.g., *State* v. *Farnham*, supra, 479 A.2d 890 (sentence upheld in Maine where trial court considered impact of trial on victim but clarified, "I do not punish people for having trials" [internal quotation marks omitted]). Some even more cautious appellate courts require an affirmative statement from the trial court to this effect. See, e.g., *State* v. *Fritz*, 178 Ohio App. 3d 65, 70, 896 N.E.2d 778 (2008) ("If an inference of sentencing impropriety exists . . . an appellate court must determine whether the record contains an unequivocal statement as to whether the decision to go to trial was not considered in fashioning the sentence. . . . Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing." [Internal quotation marks omitted.]); *State* v. *Fitzgibbon*, 114 Or. App. 581, 587, 836 P.2d 154 (1992) ("[t]he record must affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty" [internal quotation marks omitted]). Still, the Court of Appeals of South Carolina recognizes that such disclaimers can be disingenuous. See *State* v. *Brouwer*, 346 S.C. 375, 388, 550 S.E.2d 915 (App. 2001) ("[a]lthough the court herein also stated it had never, and never would, 'punish someone for exercising their right to a jury trial,' we believe the mere disavowal of wrongful intent cannot remove the taint inherent in the court's commentary, especially since

constitutional system, that result cannot be tolerated. Accordingly, I respectfully dissent from that portion of the majority opinion dealing with the sentencing claim. I would remand the matter for resentencing. In all other respects, I concur.

the record fails to reflect an otherwise appropriate basis for [the defendant's] disparate sentence").